**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Gus Gagasoules, Jan Niblett, Luster Cote, Inc.,
Rhonda Garner, and Decor Specialities, Inc., on
behalf of themselves and all others similarly situated,

          **Plaintiffs,**

  vs.

MBF Leasing, LLC; Lina Kravic; Brian Fitzgerald;
Sam Buono; William Healy; and "John Does" 1 - 100

          **Defendants**

Docket No.
08 CV 2409 (ADS)(ARL)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTIONS FOR SANCTIONS**
**PURSUANT TO FED. R. CIV. P. 11**

Dated:  New York, New York
   January 16, 2012

**Chittur & Associates, P.C.**

286 Madison Avenue Suite 1100
New York, New York  10017
(212)  370-0447

Attorneys for Plaintiffs

TABLE OF CONTENTS

INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      The Standard for Imposing Sanctions Is High. . . . . . . . . . . . . . . . . . . . . . 2

II.     No Sanctionable Conduct Has Occurred and Defendant Mischaracterizes
        the Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      The Proposed Amended Complaint Did Not Assert that Plaintiffs
                Paid Property Taxes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      The Allegations About Filling in Blank Price Terms Were
                Not False. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      The Breach of Contract Claim Against Cohen Was Proper. . . . . . . 10

        D.      The LDW Allegations Were Proper. . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    The Rule 11 Sanctions Sought Against Co-Counsel Are Inappropriate. . . 13

        A.      Rule 11 Sanctions Against Mr. Lesser Are Inappropriate Because
                the Appearance of His Typewritten Name on the Allegedly
                Sanctionable Pleading is Insufficient to Impose Rule 11
                Obligations on Him. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.      Rule 11 Sanctions Are Not Warranted Against Mr. Breit Because
                He Did Not Appear in the Action Until After The Allegedly
                Offending Pleading Was Filed And He Did Not "Advocate" the
                Pleading. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.     The Court Should Use Caution in Considering an Award of Rule 11
        Sanctions Given Their Chilling Effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TABLE OF AUTHORITIES

<u>Cases</u>

*Becker v. Montgomery*,
532 U.S. 757, 764 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bensley v. FalconStor Software, Inc.*,
2011 WL 3849541 (E.D.N.Y. Aug. 29, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Boone v. Jackson*,
2005 WL 1560511 (S.D.N.Y. July 1, 2005), *aff'd on other grounds*, 206 F. App'x 30 (2nd
Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Brooks v. Whirpool Corporation*,
2011 WL 3684774 (W.D. Tenn., Aug 23, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
498 U.S. 533 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Buyers & Renters United to Save Harlem v. Pinnacle Group NYC, LLC*,
575 F. Supp. 2d 499, 507-12 (S.D.N.Y. 2008) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Catcove Corp. v. Heaney*,
685 F. Supp.2d 328 (E.D.N.Y. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Charrons v. Pinnacle Group NY LLC*,
269 F.R.D. 221, 230-31 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Freed v. Inland Empire Ins. Co.*,
174 F. Supp. 458 (D.C. Utah 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. Marsh*,
1988 U.S. Dist. LEXIS 13071 (E.D.N.C. Sept. 30, 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
665 F. Supp. 2d 239, 264 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*In re Akl*,
2009 WL 3348281 (Bankr. D.C., Oct 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jenkins v. Sladkus*,
2005 U.S. Dist. LEXIS 2205, at *4 (S.D.N.Y. Feb. 21, 2005) .. . . . . . . . . . . . . . . . . . . . . . . . 15

i

*Kamine-Beiscorp Allegany LP v. Rochester Gas & Elec. Corp.*,
908 F. Supp. 1180, 1187-88 (W.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kaplan v. Burrows*,
2011 WL 5358180 (M.D. Fla., Sept. 6, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Marketplace LaGuardia Ltd. P'ship v. Harkey Enterprises, Inc.*,
07-CV-1003 (CBA), 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008). . . . . . . . . . . . . . . . . . 10

*On Time Aviation, Inc. v. Bombardier Capital Inc.*,
570 F. Supp. 2d 328, 330 n.5 (D. Conn. 2008), *aff'd*, 354 F. App'x 448 (2d Cir. 2009). . 1

*O'Brien v. Alexander*,
101 F.3d. 1479 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

*Phonometrics, Inc. v. Economy Inns of America*,
349 F.3d 1356 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Plains Mktg., L.P. v. Kuhn*,
2011 WL 4916687 (E.D.N.Y. Oct. 17, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pludeman v. Northern Leasing Systems, Inc.*,
Order of 1, 201, 101059/2004 (Supreme Ct. N.Y. County) . . . . . . . . . . . . . . . . . . . . . . . 22

*Simington et al. v Lease Finance Group, et al.*,
10 Civ. 6052 (KBF) (SDNY). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Soley v. Wasserman*,
2011 WL 4526145 (S.D.N.Y. Sept. 29, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
256 F.R.D. 284, 297 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
2009 WL 2922851 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Storey v. Cello Holdings*,
347 F.3d 370, 388 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

*The Carlton Group, LTD. v. Tobin*,
2003 WL 21782650 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

*Tucker Anthony Realty Corp. v. Schlesinger,*
888 F.2d 969 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Turner v. Sungard,*
91 F.3d 1418 (11th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


Other Authorities

*A Second Look at Amended Rule 11*, 48 Am. U. L. Rev. 1007 (1999), Hurta, C. . . . . . . . 20

*Advisory Committee Notes to 1993 Amendments* to Rule 11 (b) and (c),
146 F.R.D. at 591. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

iii

Defendant MBF Leasing, LLC ("MBF") moves for sanctions against Plaintiffs' counsel pursuant to Fed. R. Civ. P. 11.  MBF's motion should be denied because the record clearly shows that Plaintiffs' counsel's conduct was responsible and reasonable, and they did not engage in sanctionable conduct.

Rather, MBF's  brief ("Def. Mem.") and the supporting affirmation of MBF's counsel Robert Lillienstein misconstrue and misrepresent the record.   MBF knew of these misconstructions and misrepresentations prior to filing its motion because they were expressly addressed and laid out in Mr. Chittur's November 29, 2011 letter to the Court (Dkt. No. 187).  Respectfully, Plaintiffs' counsel submit that because there is no basis for imposition of sanctions pursuant to Rule 11, and because of Lillienstein's distortion of the record, costs and fees should be assessed against Lillienstein for bringing a frivolous motion, for which a cross-motion is not required.  *On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F. Supp. 2d 328, 330 n.5 (D. Conn. 2008), *aff'd*, 354 F. App'x 448 (2d Cir. 2009) (*citing Advisory Committee Notes to 1993 Amendments* to Rule 11 (b) and (c), 146 F.R.D. at 591).

## INTRODUCTION

MBF seeks sanctions under Fed. R. Civ. Pro 11 in connection with a motion for leave to file a Proposed Amended Complaint, which motion was withdrawn before the Court ever ruled on it.  MBF's motion is based on misrepresentations of the evidence, and on generalities that ignore what might charitably be termed inconvenient facts to their position, including the withdrawal of the motion for leave to amend, which should have mooted any conceivable claim for sanctions, if MBF had ever had a valid ground to seek them (which, as detailed below, it did not).

1

Specifically, MBF:  (1) misquotes from the Proposed Amended Complaint ("PAC"), literally altering words with convenient brackets that completely change the meaning of the quoted phrases; (2) charges Plaintiffs with including a baseless cause of action in the PAC when this Court had told MBF"s counsel Lillienstein at a conference that it should not file a summary judgment motion addressed to the very same claim; (3) claims that Plaintiffs have no basis to pursue one of their claims against Jay Cohen, a proposed individual defendant, but neglects to discuss or even mention Cohen's own testimony, which showed that Cohen may be liable under alter ego doctrine; and (4) asserts that Plaintiffs should be sanctioned for including in the PAC claims arising from a "loss damage waiver" ("LDW"), on the ground that the Court had previously decided that "insurance" claims were out of the case, yet MBF's own witness admitted under oath that LDW *was not* insurance, and the LDW claims in the PAC are materially different from those in the original complaint.

## ARGUMENT

I.  <u>The Standard for Imposing Sanctions Is High</u>

In this Circuit, the standard for imposing Rule 11 sanctions is high (*see Storey v. Cello Holdings*, 347 F.3d 370, 388 (2d Cir. 2003)), and courts must "resolve all doubts in favor of [the party facing Rule 11 sanctions]." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks and citations omitted). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement . . . [Rule 11 sanctions] do [not] extend to isolated factual errors committed in good faith, so long as the 'pleading as a whole remains well-grounded in fact.' " *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010) (citations omitted).  "In deciding whether a pleading

2

violates Rule 11, the Court applies an objective standard of reasonableness. . .  But sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Catcove Corp. v. Heaney* (E.D.N.Y. 2010) (internal quotation marks and citations omitted).   Merely incorrect legal statements are not sanctionable under Rule 11(b)(2), *Storey*, 347 F.3d at 391.  Rather:

> Objectively unreasonable claims violative of Rule 11 are those where "it is patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands [.]" *Catcove Corp. v. Heaney,* 685 F. Supp.2d 328 (E.D.N.Y. 2010), citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243,254 (2d Cir. 1985).

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 264 (S.D.N.Y. 2009) (declining to impose sanctions where claims were pled in significantly more detail than in original complaint).

Further, a "party may seek reimbursement of its reasonable expenses and attorneys fees incurred in opposing a frivolous Rule 11 motion without filing a cross-motion." *The Carlton Group, LTD. v. Tobin* 2003 WL 21782650 (S.D.N.Y. 2003). Thus, this Court may require Lillienstein to pay Plaintiffs' attorneys' fees and expenses incurred in connection with these opposition papers for saddling Plaintiffs' counsel and the Court with this frivolous motion.

II.    <u>No Sanctionable Conduct Has Occurred and Defendant Mischaracterizes the Record</u>

     A.    *The Proposed Amended Complaint Did Not Assert that Plaintiffs Paid Property Taxes*

MBF's first assertion of allegedly sanctionable allegations in the PAC is that "Plaintiffs allege that MBF overcharged each of the named Plaintiffs for property taxes,

3

and that MBF also imposed an undisclosed $25 property tax filing fee." (Def. Mem. 2).
MBF argues this is sanctionable because, according to MBF, its database production
reflected that the named Plaintiffs were never charged for property taxes.  According to
the Lillienstein Affirmation (dkt 189-1), "[t]hese charges are absolutely false and
Counsel had to know they were false when they filed the proposed amendment."
Lillienstein Aff. 15, ¶ 41.

But MBF's argument is based on a clear misrepresentation.  The PAC *never
alleged that the individual Plaintiffs had been charged for property taxes*.  To the
contrary, MBF literally changes the words (and meaning) of the operative paragraphs of
the PAC, which stated that "Class Members," *not* "Plaintiffs," had such charges imposed.
Hence, MBF purports to quote the PAC as alleging:

> Defendants (a) saddle [Plaintiffs] with hitherto undisclosed and
> onerous terms, and (b) resort to electronically collecting charges
> from [Plaintiffs'] bank accounts which charges are never disclosed
> in the Form Leases, and even with respect to charges that are
> disclosed, collecting much more than what is specified. This
> includes, for example, (a) over-charging [Plaintiffs] towards
> property taxes and pocketing the difference; (b) charging an
> undisclosed $25 "filing fee" towards such property tax returns.

Def. Mem. 3-4.  But what the PAC actually alleged was:

> Defendants (a) saddle **Class Members** with hitherto undisclosed
> and onerous terms, and (b) resort to electronically collecting
> charges from Class Members' bank accounts which charges are
> never disclosed in the Form Leases, and even with respect to
> charges that are disclosed, collecting much more than what is
> specified. This includes, for example, (a) over-charging Class
> Members towards property taxes and pocketing the difference; (b)
> charging an undisclosed $25 "filing fee" towards such property tax
> returns.

Dkt. 191, at 2 para 1 (emphasis added).

4

Altering these words of the PAC to manufacture an issue where there is none is extraordinary because the statement that Class Members were charged property taxes (and other fees) is absolutely true - and MBF cannot possibly deny it.  Altman Decl. ¶9, Chittur Decl. Re Rule 11 Motion ¶7. Inasmuch as the Second Circuit cautioned that "sanctions may not be imposed unless a particular allegation is utterly lacking in support," *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003), and inasmuch as the allegation is actually true (as opposed to "utterly lacking in support"), there is no Rule 11 violation.

Contrary to MBF's misleading assertions, the PAC nowhere alleges that the named Plaintiffs *did* pay these charges (even assuming, which Plaintiffs doubt, that MBF's database is accurate, *see* Chittur Decl. Re Rule 11 Motion at ¶10).  What MBF conveniently ignores – besides literally misrepresenting the pleading – is that (1) the charges concerning wrongful property tax collection are just part of many alleged wrongs that support the alleged RICO scheme (many of which were matters as to which the named plaintiffs were subject) and (2) that MBF could, at any time, have assessed the charges against the named plaintiffs under the ongoing leases so that they had a right to injunctive and declaratory relief.

As could hardly be clearer, the property tax charges are alleged as part of the entirety of the RICO conspiracy, and the PAC is otherwise detailed, specific and lengthy in asserting other parts of the conspiracy to which the named Plaintiffs were subjected. *See PAC ¶¶67-74.*  Accordingly, it is legally irrelevant whether the named Plaintiffs were subjected to each and every alleged wrongful act because, in a RICO case, each member of the class need not suffer the exact same injury by the same wrongful acts by the

5

defendant (or, indeed, be subject to all of the same predicate acts, for instance). *See Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 230-31 (S.D.N.Y. 2010) (certifying in part tenants' RICO class action despite factual differences amongst class members who had been subject to differing tactics); *Buyers & Renters United to Save Harlem v. Pinnacle Group NYC, LLC*, 575 F. Supp. 2d 499, 507-12 (S.D.N.Y. 2008) (denying motion to dismiss class RICO claims); *see also Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 297 (D. Conn. 2009) (in RICO case, direct receipt of a misrepresentation need not be made as to each class member).

Even more fundamentally, however, Plaintiffs can assert claims for injunctive or declaratory relief regarding the property taxes. Even though Plaintiffs themselves had not been charged improperly for property taxes, given that others, as noted, had been charged, the named Plaintiffs possessed standing to seek declaratory and injunctive relief to prevent MBF from so charging them. Plaintiffs did not have to wait for such an attempt by MBF but could proactively bring an action to prevent it. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989) (injunction permitted where possibility that lenders could foreclose on loans, thereby harming plaintiff by compelling bankruptcy); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 2009 WL 2922851 (E.D.N.Y. 2009) ("It is the potential for liability that provides standing,"); *Kamine-Beiscorp Allegany LP v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1180, 1187-88 (W.D.N.Y. 1995) (where power to act could cause harm, party does not need to wait for such action but can sue to prevent the action).

Contrary to what MBF further assumes, the fact that Plaintiffs had not paid the taxes does not necessarily mean they could not be typical class representatives because

6

the typicality requirement does not require the circumstances under which the Plaintiffs and those of the class were damaged to be identical.  Rather, it is sufficient that they all proceed under a similar legal theory.  *See Bensley v. FalconStor Software, Inc.*, 2011 WL 3849541 (E.D.N.Y. Aug. 29, 2011) ("While the lead plaintiff's claims need not be "identical" to the claims of the other members of the class, 'similarity of legal theory may control.'" (citations omitted)).   And most certainly, in a RICO case, it is possible for there to be some variation between the specific circumstances under which the class representative and the class members were victimized by the same RICO enterprise.

This is a basic matter of Rule 23 jurisprudence and, of course, as often occurs, even if the putative class representative claim may not ultimately be sufficiently aligned with the class as a whole, courts can (and routinely do) permit substitution of a different class member. Accordingly, the paragraphs that Defendants pull from the proposed Amended Complaint (¶¶ 1, 67, 70, and 72) were factually true, and fully support legally cognizable claims.  MBF may not agree with the declaratory/injunctive relief claim the Plaintiffs sought to assert but, most certainly, it is not "patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Ho Myung Moolsan Co., Ltd.* 665 F.Supp.2d at 264.

Plaintiffs submit that what is sanctionable is Lillienstein's attempt to mislead the Court with respect to what the PAC asserted.  Changing words from a supposedly Rule 11-violative pleading by means of ellipses and brackets to alter the meaning and substance of the paragraphs in which they are included is a plain Rule 11 violation itself.

7

B.     *The Allegations About Filling in Blank Price Terms Were Not False*

MBF's second argument is that, at their depositions, Plaintiffs Gagasoules and Garner admitted that MBF or its agents filled in the price terms in Plaintiffs' lease contracts before they left Gagasoules' and Garner's respective stores.  Def. Mem. 4-5.  MBF contends that the allegations in the proposed Amended Complaint were therefore false.

This contention is false and misleading.  In actuality, the PAC allegations were specifically derived from the two depositions in question.  As to Mr. Gagasoules, at his deposition, he testified (through an interpreter) repeatedly that he had categorically refused to sign any contract, and MBF's agents obtained his signature by falsely representing it to be a receipt.  Chittur Decl. Re Rule 11 Motion ¶¶14-19.  The deposition excerpts that MBF cites shows merely that Mr. Gagasoules provided information about his bank account, and other items, but there was never any discussion about any lease terms.  *Id.*  The PAC is very specific; the paragraph at issue (¶79), alleges that the "'Schedule of Payments' and 'Equipment information' in the Form Lease were left blank when Mr. Gagasoules signed the Form Lease."

Lillienstein, however, specifically avoided asking Mr. Gagasoules those specific questions, although he did specifically inquire about various other boxes such as bank account and home address.  Thus, Mr. Gagasoules' testimony and the PAC's allegation are consistent.  Chittur Decl. Re Rule 11 Motion ¶¶19-20.  What MBF cites at Def. Mem. 6-7 refers to *other* items in the contract which are irrelevant to the issue of the propriety of paragraph 79, which was accurate.

8

As to Ms. Garner, the allegations at issue are contained in paragraph 103 of the PAC which states, "As with Mr. Gagasoules, the information in the boxes captioned "Schedule of Payments" and "Equipment information" in the Form Lease were filled without any authorization from Décor Specialties".  Her testimony is absolutely consistent with that allegation;

> Q.     . . . Now, do you recall signing that agreement, the lease agreement?
> A.     I recall signing a piece of paper, but I did not believe it was the lease agreement.
> Q.     Okay, I'll call to the lease agreement and <u>I'll acknowledge that you at the time did not understand it</u>, was the lease agreement, just for ease of language?
> A.     Okay.
> Q.     So, you signed the lease agreement, you knew you were signing a document that turns out to be a lease agreement?
> A.     That is correct.
>
> **********          **********          **********          **********
>
> Q.     Do you recall seeing any information, any writing on that page that you did sign that indicated that it was a lease?
> A.     I did not see that.
> Q.     Did you fill in any blanks on this document?
> A.     I did not.
> Q.     Did Mr.  Kramer fill in all the blanks?
> A.     Not in front of me.
> Q.     This is the document that you signed that you <u>now know </u>to be the lease that you signed on January 5, 2005?
> A.     Yes, it is.

Chittur Decl. Re Rule 11 Motion ¶23 (emphasis added).  What is most significant is that Lillienstein himself expressly acknowledged, in the emphasized portion, that Ms. Garner "at the time did not understand it was the lease agreement".  *Id.*  Since she testified that she never filled in the boxes at issue (indeed, she testified that she never even saw those pages), and was not even aware that a lease was involved, those filled-in boxes were

9

necessarily filled-in without her consent.  For MBF to claim that an absolutely correct allegation in the PAC  is "false" (Def. Mem. 4) is absurd.

It is finally worth noting that at the Court conference on August 9, 2010, the Court was presented with the same points by Lillienstein when he requested leave to move for summary judgment on these issues and the Court, at that time, denied leave. Chittur Decl. Re Rule 11 Motion, ¶¶31-32. Certainly, asserting factually accurate claims that the Court had informed Defendant, at that point in the litigation, could proceed, is not a violation of Rule 11.

C.      *The Breach of Contract Claim Against Cohen Was Proper*

MBF claims that since the leases were all in the name of MBF, Jay Cohen cannot be liable for breach of that contract.  Yet, under alter ego theories and the doctrine of piercing the corporate veil, he may be held liable.  Plaintiffs' claims are, at the pleading stage, entitled to broad deference, and immune from Rule 11 attack.  *Marketplace LaGuardia Ltd. P'ship v. Harkey Enterprises, Inc.*, 07-CV-1003 (CBA), 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008) ("[T]he more well-reasoned rule is that where the veil-piercing claims are not based on allegations of fraud, the liberal 'notice pleading' standard of Rule 8(a) applies.").

It is settled that the corporate veil doctrine would apply where "maintaining the corporate form would sanction a fraud, illegality, or injustice against the plaintiff." *Plains Mktg., L.P. v. Kuhn*, 2011 WL 4916687 (E.D.N.Y. Oct. 17, 2011) (citing cases).  As Judge Glasser of this Court reiterated recently, "it is an assertion of facts and circumstances which will persuade the court to impose corporate obligation on its owners." *Soley v. Wasserman*, 2011 WL 4526145 (S.D.N.Y. Sept. 29, 2011).  Given the

10

comprehensive, wide-ranging, detailed allegations of the PAC, and the fact - conceded by Cohen himself - that MBF was nothing more than a paper entity with neither assets nor employees, it is clear that Cohen could be liable for MBF's contractual obligations under these theories.  Chittur Decl. Re Rule 11 Motion, ¶¶41-43.  Again, MBF may not agree with the claim, but a colorable claim existed and the pleading did not violate Rule 11.

      D.    *The LDW Allegations Were Proper*

Lillienstein objects that the LDW allegations was a repetition of the "claims based on allegations [that were] already dismissed," and hence violative of Rule 11.  Def. Mem. At 9.  MBF is referring to the fact that the Court had dismissed claims in the case asserting the LDW charges were an unauthorized insurance premium.  Chittur Decl. Re Rule 11 Motion, ¶34.

But the PAC made a different claim, which was well-grounded in the discovery in other actions, that LDW <u>was not</u> insurance but was an "insurance non-compliance fee" which was written into the lease after the Plaintiffs and class members had signed the leases:

> Q.  Now this is called an Insurance Noncompliance Fee?
> A.  Correct.
> Q.  Is that effectively the same thing as the Loss Damage Waiver?
> A.  Yes.

Altman Decl. Re Rule 11 Motion, "Ex. 2," at 203-4 (Cohen Dep. Tr.)

Furthermore, neither the amount of the LDW nor the property tax fee was specified within the contract.  Defendants admitted that these amounts were determined by MBF after the contract was signed- in effect written in after execution:

> Q  So the amount of 4.95, which charged by the company without any

11

mention -- strike that. If Mr. Gagasoules is paid the 4.95 LDW, that price of 4.95 is not disclosed nywhere in the lease, correct?

MS. NIGRO:  Objection. You can answer.

THE WITNESS:  Correct.

BY MR. ALTMAN:

Q   That price was supplied by Northern Leasing after the lease was signed, correct?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  Correct.

BY MR. ALTMAN:

Q   Mr. Gagasoules would have become aware of it only because money was taken out of his account, correct?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  Correct.

BY MR. ALTMAN:

Q   The company has a verification process, right?

A   Correct.

Q   The verification forms that were in use at the time Mr. Gagasoules -- did it have in there to alert the merchant that there was a $4.95 charge for the loss damage waiver?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  I am not sure.

BY MR. ALTMAN:

Q    The verification form, that would be included as part of the lease file, correct?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  Yes.

BY MR. ALTMAN:

Q    If you go to the section on number seven on taxes, is there any mention in here that the property tax fee is $25?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  No.

BY MR. ALTMAN:

Q   So that price of $25 was supplied by Northern Leasing after the lease was signed, correct?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  Yes.

BY MR. ALTMAN:

Q    Anybody who signed this version of the lease and was charged a personal property tax, that price would have been supplied after the lease had been signed, correct?

MS. NIGRO:  Objection.  You can answer.

THE WITNESS:  Yes.

BY MR. ALTMAN:

Q   You would agree any lease that didn't mention that the property tax fee

> was $25, that $25 amount would have been supplied by the company after the lease was signed, correct?
> MS. NIGRO:  Objection. You can answer.
> THE WITNESS:  Yes.

Altman Decl. Re Rule 11 Motion, "Ex. 1," at 103:15-106:16 (Kravic Dep. Tr.).

Accordingly, notwithstanding what Lillienstein now claims, MBF affiliates have admitted that what the Court had previously dismissed was not the same as what the PAC pled.  Incontrovertibly, it cannot be a Rule 11 violation where the factual basis for the claim is a statement, under oath, of a representative of the party (or its affiliate).

As to the LDW claim itself, it is different from the claim this  Court dismissed regarding insurance.  Whereas the original insurance claim was for MBF's collection of unauthorized premiums, dkt 6-2, at 17¶63, the LDW claim in the PAC was that LDW was not insurance at all, and the amount of the LDW was written in after the contract was signed by Plaintiffs and class membere.

In fact, discovery in other lawsuits have revealed that the LDW was "a total scam providing no benefit whatsoever to class members," Chittur Decl. Re Rule 11 Motion, ¶38 (*quoting* Memo in Support of Cross-Motion for Summary Judgment in Pludeman). All named Plaintiffs were charged the LDW fee.  Comp., ¶63.  Therefore, as with other terms of the lease, the charge for the LDW was unauthorized and that was a viable claim, was not related to an "insurance claim" and certainly not one violative of Rule 11. Chittur Decl. Re Rule 11 Motion, ¶¶35-38.

III.   The Rule 11 Sanctions Sought Against Co-Counsel Are Inappropriate

Defendant separately names and seeks sanctions against Seth R. Lesser ("Lesser") of Klafter Olsen & Lesser LLP and Mitchell M. Breit ("Breit"), of Hanly Conroy Bierstein

Sheridan Fisher & Hayes LLP.  In addition to the points raised above in opposition to the motion, there are additional compelling reasons why the motion should be denied as to Mr. Lesser and Mr. Breit.

Indeed, prior to filing the motion, Mr. Lesser and Mr. Breit informed Robert D. Lilienstein ("Lilienstein"), the signatory on the motions, that the proposed Rule 11 motion against them lacked merit, *see* Declarations of Seth R. Lesser at ¶¶ 11-12 (the "Lesser Decl.") and Mitchell M. Breit at ¶ 8 (the "Breit Decl."), but Lilienstein nonetheless persisted in filing the motion – one that has now required significant time and effort to prepare the present response and, ultimately, the Court's involvement.

A.  *Rule 11 Sanctions Against Mr. Lesser Are Inappropriate Because the Appearance of His Typewritten Name on the Allegedly Sanctionable Pleading is Insufficient to Impose Rule 11 Obligations on Him*

The sole asserted basis for sanctions against Mr. Lesser is that he is listed as co-counsel on the now withdrawn PAC.  There is no other predicate whatsoever, and MBF cannot cite any authority for the proposition that merely being listed as co-counsel on an allegedly sanctionable pleading (without anything more) can subject an attorney to Rule 11 sanctions.

Lilienstein was informed of the lack of legal merit for such a position prior to the time he filed his motion, he admitted there was no such authority "within this Circuit" and he nonetheless filed it without providing any authority from *any* circuit that would support such a Rule 11 sanction.  Lesser Decl. at ¶¶ 11-12.  To the contrary, the Rule itself and the case law recognize that to be held liable under Rule 11, an attorney must, in some affirmative manner, sign or otherwise advocate the sanctionable pleading before the Court.

14

Prior to the 1993 amendments to Rule 11, sanctions ran solely to "the party who *signs* a pleading or other paper." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533 (1991). "To this end, [Rule 11] sets up a means by which litigants certify to the court, by *signature*, that any papers filed are well founded." *Id.* at 542 (emphasis supplied). The 1993 amendments, however, expanded the imposition of sanctions "based upon the 'presenting' of a paper – rather than limiting sanctions to those papers that bear an attorney's signature – and defining 'presenting' broadly as 'signing, filing, submitting, or later advocating.'" *O'Brien v. Alexander*, 101 F.3d. 1479 (2d Cir. 1996) (citing amended Rule 11).

Here, Mr. Lesser did not engage in any affirmative conduct that could subject him to Rule 11 sanctions. He did not "sign," "file," "submit," or "advocate" the allegedly sanctionable pleading. Lesser Decl. ¶ 8. Rather, Mr. Lesser's name is one of several typed names and law firms listed in the signature block of the PAC. He acted as a co-counsel, having been engaged as lawyers often are (including individuals such as law professors or retired judicial officers) to handle particular matters if requested by Mr. Chittur, should such requests arise in the action. *See* Lesser Decl. at ¶ 7.

By Rule 11's plain language, the appearance of Mr. Lesser's name on the allegedly sanctionable pleading falls short of sanctionable conduct and, in the Rule 11 context, the courts, from the Supreme Court on down, have read Rule 11 narrowly. *See, e.g., Becker v. Montgomery*, 532 U.S. 757, 764 (2001) ("we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names ... we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten ...."); *Jenkins*

15

*v. Sladkus*, 2005 U.S. Dist. LEXIS 2205, at *4 (S.D.N.Y. Feb. 21, 2005) ("a document bearing a rubber stamped facsimile of a signature is not 'signed' within the meaning of Rule 11(a)."); *Freed v. Inland Empire Ins. Co.*, 174 F. Supp. 458 (D.C. Utah 1959) (typed name and address at close of motion is not signing of motion as required by Federal Rules).

Nor could Mr. Lesser be deemed to be "advocating" the motion merely by having his typewritten name appear on the signature block.  The Second Circuit explained what is meant by "advocating" a pleading in *O'Brien*. There, an attorney made certain statements during oral argument on a motion to dismiss and the District Court sanctioned the attorney "because counsel was reaffirming representations found in the complaint" and was therefore "advocating the complaint for purposes of Rule 11(b). *O'Brien*, 101 F.3d. 1479.  In reversing in part and declining to hold that Rule 11 applies to oral advocacy whenever an attorney advocates a signed paper, the court noted that:

> Such a broad rule is completely contrary to the Advisory Committee's recognition that oral advocacy often requires lawyers to address new matters without much opportunity for study and reflection. In fact, because oral advocacy almost always relates in some way to a prior signed paper, adopting the district court's proposition would entail a significant and unintended expansion of Rule 11's scope.
>
> That an oral statement is made in the course of advocating a pleading or motion is not enough; to be sanctionable the oral statement must relate directly to a particular representation contained in the document that the lawyer is then advocating. Thus, to be sanctionable an oral representation must meet two requirements: (1) it must violate the certification requirement of Rule 11(b), *e.g.,* by advocating baseless allegations, and (2) it must relate directly to a matter addressed in the underlying paper and be in furtherance of that matter to constitute advocating within the meaning of subsection (b).

*Id.* at 1489, 1490.  Similarly, the Advisory Committee Notes to the 1993 amendments, reprinted at 146 F.R.D. 583, 585, explains that  "presenting" as, "[f]or example, an attorney who during a pretrial conference insists on a claim or defense."

When faced with the identical legal issue of an attorney who was listed in counsel block on a pleading, in *Harris v. Marsh*, 1988 U.S. Dist. LEXIS 13071 (E.D.N.C. Sept. 30, 1988), the *Harris* court vacated all sanctions previously imposed and held that the attorney whose name appeared on the sanctionable pleading "cannot be regarded as having signed any pleading so as to subject her to Rule 11 sanctions."  *Id.* at *8. Although a pre-1993 Amendment decision, the reasoning of the case is fully applicable (and counsel has been unable to find any contrary authority).  Further, the court noted that its interpretation of the signature requirement "is also consistent with the rule's concern about satellite proceedings . . .  Limiting Rule 11 sanctions to the attorney who signs the document reduces the need for satellite litigation over who exactly was responsible for a particular document."  *Id.* at *6-7.

Much like the attorney in *Harris*, the extent of Mr. Lesser's allegedly sanctionable Rule 11 conduct is merely that his name appears in the typewritten signature block of the amended complaint.  Lesser Decl. ¶ 8.  Pursuant to the plain language of Rule 11, consistent with *O'Brien*, and as the court held in *Harris*, such passive involvement is insufficient to support the imposition of Rule 11 sanctions.  Were it otherwise, then literally scores of lawyers could be open to Rule 11 sanctions in those cases, such as large MDL proceedings or other substantial cases, where the co-counsel on a matter can number in the tens (or dozens) and yet many filings are made without any input by that individual lawyer. Rather, the case law and the Rule's wording and logic compel its

17

limitation with regard to pleadings to those who sign the pleading and otherwise to those who, in fact, take an active advocacy role.  Mr. Lesser did neither.

Lastly, Mr. Lesser has never been the subject of any disciplinary proceeding or, prior to now, any sanctions motions whatsoever and, it is perhaps not unfair to say that he has a recognized level of professional standing, having, over the years being asked to be a member of, *inter alia*, advisory and other committees, has held leadership positions in professional organizations, and received other honors including, *e.g.,* having been inducted into the American Law Institute.  Lesser Decl. ¶¶ 3-4 & Ex. A.

For the foregoing reasons, and even assuming *arguendo* that Defendant's Rule 11 sanctions motion otherwise had merit (which it does not), as to Mr. Lesser, it is baseless, should be dismissed and sanctions should be awarded against Defendants and their counsel for making a wholly frivolous motion against Mr. Lesser.

B.    *Rule 11 Sanctions Are Not Warranted Against Mr. Breit Because He Did Not Appear in the Action Until After The Allegedly Offending Pleading Was Filed And He Did Not "Advocate" the Pleading*

On April 18, 2011, *five* months after the filing of the motion to amend the complaint of which Defendant now complains, Mr. Breit noticed his appearance in this matter. Breit Decl. at ¶3,4.  The decision to notice his appearance followed discussions with Krishnan Chittur, Esq., counsel of record, about another case Mr. Breit's firm had filed in August 2010 **a**gainst related entities to Defendant because there existed substantial similarities in the factual underpinnings of plaintiffs claims here to those asserted by plaintiffs in that case, *Simington et al. v Lease Finance Group, et al.*, 10 Civ. 6052 (KBF) (SDNY).  Breit Decl. at ¶3.  Even though Defendant concedes, as it must, that Mr. Breit was not a party to the original filing of the motion to amend, *see* Def.

18

Mem. at 20, Defendant bases its Rule 11 motion against Mr. Breit *entirely* on inapposite law from another Circuit, without a single reference to governing standards regarding what is meant by "advocating" as the Second Circuit defines it for Rule 11 (b) purposes. When Mr. Breit pointed out to Defendant that this interpretation of the law was incorrect, Breit Decl. at ¶5, Defendant nevertheless proceeded to file the motion against Mr. Breit.

As explained above, Defendant's interpretation of what constitutes "advocating" in this Circuit is wrong. *O'Brien,* 101 F.3d at 1489 (even oral statement made in the course of advocating a pleading or motion is not enough to impose sanctions without relating the statement directly to a matter addressed in the underlying paper).  Surely if an oral statement advocating a pleading is not sufficient, noticing an appearance in a case long after the allegedly offending pleading has been filed – where no oral presentation or signed representation of any kind in support of the offending pleading exists - cannot be construed as "advocating" for the purpose of imposing Rule 11 sanctions.

Glaringly absent from Defendant's brief is any reference to *O'Brien*.  The sole authority cited by defendant in support of sanctions against Mr. Breit is a factually distinguishable case out of the 11th Circuit. In *Turner v. Sungard*, 91 F.3d 1418 (11th Cir. 1996), substitute plaintiff's counsel made his first appearance in the case at a pre-trial conference where "he told the court that he had evidence to support Plaintiff's claim." He thereafter failed to respond to defendant's motion for summary judgment or to appear at oral argument of the motion, and then failed to respond to the district court's show cause order regarding sanctions. Though the circuit court found that "by appearing

19

in this case [counsel] affirmed to the court that the case had arguable merit," 91 F.3d at1421, it was in the context of the aforementioned representations by counsel about evidence he had to substantiate plaintiff's claims - which he never presented to the court - and after dismissal of the action, that sanctions were awarded.

In contrast, here Mr. Breit has never appeared before, or made representations to the court.  Breit Decl. at ¶8.  Mr. Breit's name appears on only one post-notice of appearance document: the court-ordered supplemental brief in support of the motion to amend, where his name – not his signature – appears as "Of Counsel;" this action has not been dismissed; the pleading upon which defendant seeks sanctions is a *motion* to amend the complaint, *which has been withdrawn*; and most importantly, the Second Circuit has a much more restrictive view of what constitutes "advocating" than the *Turner* court.  Indeed, one commentator analyzing the post-1993 amendments has specifically noted the conflict between the Eleventh and Second Circuits. *A Second Look at Amended Rule 11*, 48 Am. U. L. Rev. 1007 (1999), Hurta, C. (simply advancing a contention contained in a pleading is not sanctionable); *In re Akl*, 2009 WL 3348281 (Bankr. D.C., Oct 15, 2009) (distinguishing *Turner* and declining to award sanctions). *But see Kaplan v. Burrows*, 2011 WL 5358180 (M.D. Fla., Sept. 6, 2011) (following *Turner); accord Phonometrics, Inc. v. Economy Inns of America,* 349 F.3d 1356 (Fed. Cir. 2003) (attorney continued to pursue legal theories after he knew they were no longer tenable because of governing precendential decisions in Federal Circuit); *Brooks v. Whirpool Corporation*, 2011 WL 3684774 (W.D. Tenn., Aug 23, 2011) (attorney *signed* and filed with court several documents that continued to advocate complaint which included claims time-barred by *res judicata)*.

It also bears noting that Mr. Breit, like Mr. Lesser, has never before been

sanctioned, nor has a sanctions motion ever been filed against him in his more than 30

years as a member of the bar.   He has devoted many years in service to the profession

and the advancement of professionalism and ethics within the bar.  Breit Decl. at ¶2.

For the foregoing reasons, sanctions against Mr. Breit are unfounded and

Defendant's pointed refusal to drop the sanctions motion as against Mr. Breit after being

alerted to the frivolousness of such a motion warrants an award of costs and fees to

Plaintiffs.

IV.   The Court Should Use Caution in Considering an Award of Rule 11 Sanctions
      Given Their Chilling Effect

A further comment on the use of the sanctions motion as a "scorched earth"

tactic, or as a means to dissuade competent counsel from co-counseling or appearing in

a case, is in order.  As Judge Scheindlin noted in *The Carlton Group, LTD. v. Tobin*,

2003 WL 21782650 (S.D.N.Y. 2003):

> The Supreme Court has cautioned that Rule 11 "must be read
> in light of concerns that it will ... chill vigorous advocacy."
> Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct.
> 2447, 110 L.Ed.2d 359 (1990); see also MacDraw, Inc., 73
> F.3d at 1259. "[J]udges should always reflect seriously upon
> the nuances of the particular case, and the implications the
> case has on the nature of the legal representation, before
> imposing sanctions." Thompson v. Duke, 940 F.2d 192, 195
> (7th Cir.1991).

*Boone v. Jackson*, 2005 WL 1560511 (S.D.N.Y. July 1, 2005), *aff'd on other*

*grounds*, 206 F. App'x 30 (2nd Cir. 2006).

While counsel hesitates to read improper motive into the actions of

defense counsel, the long and tortured history of the relationship between

counsel here cannot be overlooked. *See* e.g., *Pludeman v. Northern Leasing Systems, Inc.*, Order of 1, 201, 101059/2004 (Supreme Ct. N.Y. County) (arising out of Defendants' refusal to pay $500 towards costs awarded by the Court of Appeals) (*see* Chittur Decl. Re 1927 motion, ¶81); *Pludeman v. Northern Leasing Systems, Inc.,* Index No. 101059/07 (New York Co.) (Lillienstein took an interlocutory appeal from court's grant of *pro hac vice* admission to Altman), Altman Decl. at ¶18.  Lillienstein seeks to chill the vigorous advocacy of this case by using Rule 11 as a litigation tactic, implicating "the nature of the legal representation."  For this reason alone, we respectfully submit that MBF's Rule 11 motion be denied and, given Lillienstein's distortion of the record, sanctions be imposed upon MBF and Lillienstein.

## CONCLUSION

For the reasons set forth herein, Defendant's motions for sanctions pursuant to Fed. R. Civ. P. 11 should be denied, and because the motion is not grounded in law or in fact, Plaintiffs respectfully submit that costs and fees should be assessed against Defendant's counsel.

Dated: January 16, 2012

Respectfully submitted,

Sd/
By:_____

Krishnan Shanker Chittur
CHITTUR & ASSOCIATES, P.C.
286 Madison Avenue
Suite 1100
New York, NY 10017
Tel:  212- 370-0447

22

Fax: 212-370-0465

Keith Altman

                Sd/
By:_____
Law Offices of Keith Altman
26 Willow Drive
Massapequa Park, NY 11762
(516) 456-5885

Seth R. Lesser

                Sd/
By:_____
KLAFTER OLSEN & LESSER
LLP
Two International Drive, Suite
350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220

Mitchell M. Breit

                Sd/
By:_____
HANLY CONROY BIERSTEIN
SHERIDAN FISHER & HAYES,
LLP
112 Madison Avenue
New York, New York 10016
Tel. (212) 784-6400
Fax (212) 213-5949

*Attorneys for Plaintiffs*

23