EXHIBIT 1



JUDGE MARRERO    10 CV  6052

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RODNEY and SHARON SIMINGTON, d/b/a
PAINTBALL UPHORIA, on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

    vs.

LEASE FINANCE GROUP, LLC, NORTHERN
LEASING SYSYEMS, INC., NORTH
AMERICAN BANCARD SYSTEMS, INC. and
COMERICA INCORPORATED,

                    Defendants.

Case No.

RECEIVED
AUG 12 2010
U.S.D.C. S.D. N.Y.
CASHIERS

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## I.    INTRODUCTION

1.    This is a nationwide class action on behalf of individuals and small business owners who seek compensatory damages, restitution and disgorgement of all profits gained by Defendants as a result of wrongfully taking fees and other charges from Plaintiffs' and class members' bank accounts and charging Plaintiffs and class members exorbitant and unconscionable rates for leasing of credit card processing equipment. Plaintiff also seeks remedies for Defendants' failure to adequately notify customers of this practice. Finally, Plaintiff seeks to enjoin Defendants from continuing to conduct such improper activities. Plaintiffs, for themselves and all others similarly situated, brings this action pursuant to Arizona's consumer protection statute (Ariz. Rev. Stat. §44-1522), New York Deceptive Sales Practices Act (N.Y. Gen. Bus. § 349), and 46 other State Consumer Statutes; Common Law Fraud; Negligent Misrepresentation, Conversion, Breach of Contract and Unjust Enrichment.

2.    Defendants are engaged in a nationwide scheme of defrauding small business

owners in connection with the sale of electronic payment processing services, including the processing of debit and credit card transactions. Defendants induce small businesses to enroll in their electronic payment processing services by offering free items of merchandise, cash incentives and promises of low transaction rates only to later, without notice, charge higher "terminal fees" than those initially disclosed, deducting such amounts from Plaintiffs' bank accounts to which Defendants fraudulently gain access.

3.   Indeed, after Defendants present small business owners with "awards" of payment processing equipment like cash registers, they offer "business opportunities" to Plaintiffs in the form of "free trials" of debit/credit card terminals.   After filling out and signing a single application form, Defendants alter the contracts by adding pages that were never shown to the businesses and by filling in blank areas with new terms. These newly added pages and terms include purported provisions for early termination fees, liquidated damages, liability limitations, arbitration clauses, and choice-of-law and choice-of forum provisions. Sometimes, Defendants go so far as to forge the initials or signatures of the small business owners on the newly added pages or filled in areas.   As evidenced by the many similar actions commenced around the country and in this District alleging the identical, or similar fact patterns, the altered contracts contain unconscionable provisions, including long-term leases that require the small businesses to pay wildly inflated monthly rental fees for credit card processing terminals and inflated early-termination fees, and require the business owners to personally guarantee the contracts. Defendants then attempt to enforce these "contracts" by making automatic debits from the business owners' accounts to collect their higher-than-disclosed processing rates and their inflated rental fees, and by threatening and harassing the business owners with dunning phone calls and false reports to credit agencies.

II.   **PARTIES**

**Plaintiffs**

4.   Plaintiffs Sharon and Rodney Simington (the "Simingtons") are small business owners who at all times alleged in this Complaint operated a business known as Paintball Uphoria in Kingman, Arizona.

**Defendants**

5.   Defendant Lease Finance Group, LLC ("LFG") is a Delaware corporation with its principal place of business at 132 West 31st Street, New York, New York. LFG is engaged in the equipment lease financing business and also maintains offices in the State of Illinois.

6.   Defendant Northern Leasing Systems, Inc. ("NLS") is a New York corporation with its principal place of business at 132 West 31st Street, New York, New York. NLS is engaged in the equipment lease financing business and upon information and belief is an affiliate and/or alter ego of LFG.

7.   Defendant North American Bancard Systems, Inc. ("NAB") is a New York corporation with its principal place of business at 47 Allen Blvd., Farmingdale, New York, County of Nassau.

8.   Defendant Comerica Incorporated ("Comerica") is a financial services company headquartered in Dallas, Texas, with locations in other states including Michigan, California, Arizona and Florida.

III.   **JURISDICTION AND VENUE**

9.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

3

10.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Defendants have caused harm to class members residing in this District.

IV.     STATEMENT OF FACTS

11.     Defendants are involved in the lease finance business, in which each defendant plays a distinct role.  In the course of that business, Defendants may supply financing for the leasing of electronic point-of-sale equipment, such as ATM machines, cash registers and credit card processing equipment, to merchants selecting such equipment from a third-party equipment vendor or supplier.  According to Defendants in a court submission in a parallel case, "the equipment lease transactions come about when an independent, third-party vendor – a 'Vendor' or independent sales organization – referred to in the industry as an 'ISO' – markets credit card processing services to a merchant. If, as part of that transaction, the merchant is to obtain a new credit card processing terminal, and if the merchant chooses to lease, rather than purchase, the terminal, one of the equipment lease finance entities may be available to provide lease financing."

12.     The ISO induces class members to sign the applications for purported lease contracts by offering various financial incentives or "free trials" of credit card processing equipment, when in fact, there is nothing "free" about it.  Typically, upon information and belief, the ISO, in this case NAB, provides a one page application to class members, which purports to be an equipment finance lease. At the time Plaintiffs complete the application, Defendants do not inform class members that there are any additional pages to the lease agreement which are not shown to them. Defendants intentionally lead class members to believe that the one page provided is the entire agreement containing all transaction terms. The one page lease agreement appears to be a complete document, containing all material information customarily expected by class members and other small businesses.

4

13.    Defendants then later refuse to honor the so-called "free trial," instead inducing class members to provide information – usually a canceled check – so that Defendants may access Plaintiffs' accounts for payment of transaction fees.  When the fees that are charged exceed those which were promised and Plaintiffs complain, Defendants renege on the initial promise with revisionist statements about the nature of the original promise, often stating new terms about which Plaintiffs have never heard.  Defendants then offer proof of the terms by providing pages of a lease contract the Plaintiffs have never seen nor signed – yet with their forged signatures in evidence.  Class members are then left owing fees and penalties to parties with whom they had no prior dealings.

14.    LFG claims to be the #1 Point of Sale (POS) equipment lessor in the country. "Partners" who decide to work with LFG are assigned a representative from LFG's "Vendor Relations" team.  Through these "partners" LFG effects its fraudulent transactions, the real focus of which is to ensnarl "personal guarantors" in its leasing scam.

**The Simingtons' Transactions With Defendants**

15.    Rodney Simington ("Rodney") was informed in 2008 that he had "won" a cash register on eBay through NAB.  When the item was due to be paid for and mailed, an NAB sales representative named Chris sent a message to contact him directly for a great business opportunity.  After calling Chris, Rodney was informed that the cash register came with a free trial of a debit/credit card machine, but that he could not have the cash register unless he agreed to try the machine as part of the great deal.  According to Chris, this offer was a free trial with no obligation. All Rodney had to do was to fill out the application and fax it back to Chris.  Chris said that with the first 100 cash register applications, NAB would offer a promotion for a free cash incentive to new businesses in the amount $750.00, so Rodney "had better act fast."

16.    The debit/credit card machine being offered would allow Rodney to accept debit

and credit cards at his business.   When the charges were processed, NAB would pay Rodney the amounts charged, less a per-transaction processing fee, by depositing the money owed directly into Rodney's business bank account.   Lease payments for the equipment would be withdrawn directly from the bank account as well.

17.     Rodney filled out the application and faxed it to Chris. The application also requested that Rodney include a "voided" copy of a check so that NAB would know where payments for debit and credit charges could be deposited.  Chris stated that the per-transaction fee that would be deducted from each payment would be a minimum of 75 cents per use or a 1.5% fee on the total value of each sale, whichever was greater.

18.     Rodney received the debit/credit card machine, and began accepting payment by credit or debit card at his business.  At some point, Rodney realized that the funds for these charges were not being deposited into his account. Rodney attempted to contact Chris and was informed by another employee identified as Natalie (who would not give her last name because "they are not allowed to") that Chris was never employed there.

19.     Rodney finally spoke to a Joshua located in Missouri about the missing payments. When Rodney asked Joshua why deposits were not showing in his account, Joshua assured him that he would take care of the matter.

20.     At the same time that Rodney spoke to Natalie about the missing deposits, he also inquired about the $750 incentive payment, which similarly had not been paid into his business bank account.  Natalie told him that the $750 deposit incentive for trying the product was not applicable to Rodney because he had to enter a longer term lease – at least 1 year - to receive the incentive payment.  Rodney was then told to contact the NAB branch in South Dakota and then to contact another branch located in Chicago, Illinois.

21.     After Rodney spoke to NAB, a few debit or credit card transaction receipts began to show in Rodney's account, although many never did. NAB deducted from the amounts charged a per-transaction fee, but at a much higher rate than the agreed-upon 1.5% or 75 cent fee; indeed, for all the transactions for which Rodney was actually reimbursed, the fees charged exceeded 20%.

22.     In addition, Defendants began to withdraw money from Rodney's account at random amounts; these withdrawals, in amounts ranging from $108.00 to over $200.00, were all labeled "Global Pay" fees.  Some of the lease payments for the credit/debit card terminal also began to appear as a separate deduction in the amount of $35.00. Rodney then tried to contact Joshua and was informed there was no Joshua employed at NAB. He tried to contact Natalie and that number was then out of service.

23.     Rodney tried to call NAB through the numbers available through his own bank's records which referenced the deductions from his account, and was transferred to another line with an answering message for a Merissa, with whom Rodney left numerous messages which were never returned.  Rodney then called the NAB main number and told a customer service person named Irene that he would be returning this debit/credit card machine immediately. Irene stated that if he cancelled the agreement, he would incur a $750.00 fee and that he was "on a contract."

24.     Thereafter, anticipating more fraudulent deductions, Rodney went to his bank to put a stop payment on NAB withdrawals from his account; as a result, the bank initiated an investigation. Rodney was later informed by his 12 year- old son about several harassing phone calls from a someone who refused to give a name, asking questions like "where does your Dad work?; how much money does he make?; when does he come home?; what is your address?"

7

One of the callers told the son to "tell your Daddy, we are going to sue him and this is a promise from Bancard." Rodney himself answered the next such call and spoke directly to a person claiming to be a supervisor named Estevan, who claimed that Rodney owed money for cancelling this contract and that "he would get it out of [me] any way he could." Rodney told Estevan that he wanted to see "the contract," which Estevan said he would send.

25.     Several weeks later, Rodney received what purported to be a contract between himself and LFG, an entity he had never heard of.   Nor had he ever seen the contract they were claiming he had signed.  The signature on the contract purporting to be his appears to have been "cut and pasted" from his original application directly to this document.

26.     Sharon Simington ("Sharon") began to use the business bank account from which NAB had made the unauthorized withdrawals as her own bank account several months after the events described above.  Sharon received an e-mail soon after a paycheck of hers was deposited into this account with an overdraft warning.  Sharon investigated with the bank and found that there had been two recent withdrawals from the account of which she was unaware, one in the amount of $400.00 and another in the amount of $405.00. The deductions were made by defendant Comerica located in Michigan. Neither Sharon or Rodney had ever authorized Comerica to make deductions from the account.  Sharon called Comerica and was told she would have to call NAB.  When she did so she was informed there was no information in her name, social security number, bank routing number, identification number, or tracing number and she was asked to fax her bank statement.  She refused, and went back to her own bank to dispute the matter, which is presently again under investigation by her bank.

27.     On or about October 17, 2009 Rodney received a dunning letter from LFG stating that he owes $5,443.50.

**Other Similar Complaints Nationwide**

    28.    The Better Business Bureau of Chicago/Northern Illinois reports 741 complaints against LFG on its website with the following entry:

> "Consumer complaints allege misrepresented and objectionable sales practices, and/or unauthorized charges and debits from consumers' bank accounts, and/or lack of notification of end of contract and subsequent renewal and billing. Further complaints allege technical problems with the credit card processing equipment provided by Lease Finance, and difficulties in either obtaining help from the company or returning the equipment in a timely fashion. The company deems that returning its own equipment does not relieve consumers from their payment obligations per the lease agreement, despite the fact that the consumers may no longer have any equipment and/or receive any services. Additional complaints allege that the three day right of rescission and timely termination of contract have not been honored. Other allegations cite poor customer service, being hung up on by company representatives, the company pursuing allegedly unwarranted collection actions and contacting credit report agencies despite consumers' continuous attempts to provide documentation to support their cases. Upon sending requested documentation to Lease Finance, multiple consumers allege that the company declines receiving it and/or claims it was sent to the wrong location. Additional consumers allege to have never signed contracts with the company and question where the alleged signatures baring their names came from."

    29.    A review of internet consumer sites reveals numerous similar complaints, including the following examples:

    a.    4/27/09:

> "I also signed a lease with Lease Finance Group. I have tried to offer them a settlement, they only want the entire lease amount. The machine I received can be bought on line today for $149. They expect me to pay $3, 025 for it. This would be like paying $400, 000 for a $20, 000 car. I wrote the Illinois Attorney General's office, to Lisa Madigan's attention, and they have only said so far that they have not received a response from LFG as of yet.
>
> I have decided as of today to go after these crooks through the court system. If you or anyone else can supply me with your story and give me approval to have it to share with the judge on court day with LFG, I would appreciate it."

b.     5/8/09:

"I too am a victum [sic] of LFG. It all started with my changing processing companies. Upon doing this, I was sent another machine and I only needed one. I tried calling LFG to see if they would take back one machine and in a very arrogant tone I was told "you signed a contract". I found it hard to believe that no one in their organization had the authority to take back one not both machines. From this point a war insued [sic]. I bagan [sic] getting phone calls all day at my job, all day at my home, two to four letters every other day at both my job and my home. I eventually spoke to two people from their 'legal department' advising me that if I don't pay them, I would have to come from FL to New York and retain a lawyer and pay a ton of money. Fearstruck [sic], I made arrangements [sic] to have a one time payment taken from my husband's credit card in order to be able to make payment arrangements for the future. They proceeded to take several more unauthorized payments from this credit card. My husband made a claim for fraud and got his money back. The war is on again with threats of my arrest from LFG."

c.     9/27/2009 Troy, MI:

"Upon expiration of our contract with North American Bancard we elected to use a different company to process our credit card transactions. Our new company, Merchant Services sent them a cancellation letter signed by me on 6/5/09. Three months later we are still having fees taken from our bank account by Global Pay and North American Bancard. Despite numerous phone calls they claim they never received the cancellation notice. I suppose this might possibly be true and was willing to give them the benefit of doubt, until I read this sites [sic] numerous complaints of this very same thing recurring over and over by other merchants. I have to assume that this must just be there shady way of conducting business. We have had to close our bank account to protect our selves [sic] from them. Our bank is conducting a fraud investigation into the matter and we intend to notify the state attorney general regarding there [sic] practice. I would caution any one against doing business with this company. I can't wait to see the usual form letter response from them that they post after all the other complaints posted. Interesting in that any company, especially a financial one would generate some complaints after awhile in business, but the sheer number I see from just a casual glance at the internet is over whelming and should be a warning sign. I wish I had done my home work and looked these clowns up before I ever did business with them."

30.     d. Further examples of lead-ins to the many web complaints against LFG:

• **Lease Finance Group is a SCAM!! Facebook page**
Hey everyone, I just launched a facebook page "Lease Finance Group is a

Scam!!." Look it up and join! It's time to put up solid defenses against this incredibly Horible [sic] Company. There are an estimated 300,000 victims that have been ripped-off.

**• They are a scam**
This place is a scam!!!!Do NOT sign a lease with this company. They will take money out of your account without telling you. If your bill is due then the day its due they will call EVERY number they have on file for you about 12 times each, all day, its crazy!

**• Lease Finance Group LLC**
Lease Finance Group is a scam credit card swipe company which sends representatives that perform misleading, illegal rented in-home credit card swipe machines.

**• LFG debited my bank acc. for almost 11,000.00 for a**
Lease Finance Group has been debiting my bank acc. since 2001 for a credit card machine that I just bought elsewhere for $300.00! I cannot believe this kind of fraudulent activity is legal.

**• Illegally withdraw over $750.00 from bank account...fraud team, LFG.**
I am another who bit the dust! Same scenario, After term with my contract with LFG, returning the Terminal unit, I had to do a stop payment. After 6 years they took illegally over $750.00. No one return my calls and no explanations of the withdraw.

**• Lease Finance Group took my money illigally. [sic] Can anyone help?**
US Goverment! [sic] Please involve and shut down this company. It is a scam. They came to my store 5 years ago and offer me to lease their equipment at $130.00/month for 6 month. They said after 6 month, the terminal will be mine

**• Lease Finance Group/LFG illegally did an ACH Business transaction out of my Commercial Account.**
Commercial Accounts Beware...your bank will not protect you from the ACH transactions that the Lease Financial Group/LFG. You only have 24 hours to dispute a "Business to Business" ACH transaction

**• Lease Finance Group needs to be shut down!**
Even though my lease has ended in 2006 and paid in full they are reporting to the credit agencies that I owe them 250 and I was late (even though they lost my payment and found it later). They will not take care of the problem and my credit is getting ruined.

## V.    CLASS ALLEGATIONS

31.    Plaintiffs bring this action against Defendants on behalf of themselves and all others similarly situated. The Class is defined as follows:

All persons and businesses who, from August 11, 2004 to the present, applied or contracted for merchant card services and/or related equipment with any of the Defendants.

Such persons shall be referred to as "Class Members" or "class members."

32.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

33.     Numerosity: Plaintiffs do not know the exact size of the class, but it is estimated that it is composed of more than 100 persons. The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

34.     Common Questions Predominate: This action involves common questions of law and fact to the potential class because each class member's claim derives from the same set of deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the class to recover. Among the questions of law and fact common to the class are:

a.     Whether Defendants to engage in activity designed to defraud the Class;

b.     Whether the contracts entered into by class members are enforceable and/or unconscionable;

c.     Whether Defendants unfairly, unlawfully and/or deceptively failed to provide class members all pages of operative agreements;

d.     Whether Defendants unfairly, unlawfully and/or deceptively failed to inform class members of the exorbitant rates for leasing equipment;

e.     Whether Defendants' advertising and marketing materials regarding their

12

merchant card services and/or equipment that they sold or leased were likely to deceive Class Members or was unfair;

        f.      Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

        g.      The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

        h.      Whether Class Members are entitled to declaratory, injunctive and other equitable relief and, if so, what is the nature of such relief; and

        i.      Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief;

        j.      Whether Class members are entitled to disgorgement, etc.

35.    Typicality: Plaintiffs claims are typical of the class because Plaintiffs completed applications and/or entered into contracts with Defendants and their agents that are identical or nearly identical to the standard form contract used by Defendants and their agents. Thus, Plaintiffs and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged;

36.    Adequacy: Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests

13

and that of the class. No conflict of interest exists between Plaintiffs and Class Members hereby, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such, that by prevailing on their own claims, Plaintiffs necessarily will establish Defendants' liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

37.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

## VI.     CLAIMS FOR RELIEF

### A.     FIRST CLAIM FOR RELIEF:  Consumer Fraud under Ariz. Rev. Stat. § 44-1522

38.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

14

39.     Defendants have engaged in deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522 wrongfully taking fees and other charges from Plaintiffs' and class members' bank accounts and charging Plaintiffs and class members exorbitant and unconscionable rates for leasing of credit card processing equipment.  Plaintiff also seeks remedies for Defendants' failure to adequately notify customers of this practice.

40.     Plaintiff and all others similarly situated were injured by Defendants' deceptive acts because they unknowingly were charged and improperly assessed fees to their bank accounts that they would otherwise not have incurred.

41.     As a direct and proximate cause of Defendants' violation of Ariz. Rev. Stat. § 44-1522 Plaintiffs and all others similarly situated have been damaged in an amount that will be proven at trial.

**B.      SECOND CLAIM FOR RELIEF:  New York Deceptive Sales Practices Act, N.Y. Gen. Bus. § 349 and State Consumer Protection Statutes**

42.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

43.     Defendants engaged in material, deceptive, consumer-oriented acts, in the conduct of their business that injured New York citizens in violation of N.Y. Gen. Bus. § 349  by wrongfully taking fees and other charges from Plaintiffs' and class members' bank accounts and charging Plaintiffs and class members exorbitant and unconscionable rates for leasing of credit card processing equipment.  Plaintiff also seeks remedies for Defendants' failure to adequately notify customers of this practice.

44.     Defendants furthermore engaged in this unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed as follows.

45.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 44-1522, *et seq.*

46.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*

47.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

48.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*

49.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*

50.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*

51.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq.*

52.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*

53.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §10-1-392, *et seq.*

54.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*

55.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*

56.     Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of 815 ILCS § 50511, *et seq.*

57.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*

58.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1 b, *et seq.*

59.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*

60.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*

61.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*

62.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation Mass Gen L. Ch. 93 A, *et seq.*

63.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*

64.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*

65.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, *et seq.*

66.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Missouri Stat. § 407.010, *et seq.*

67.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*

68.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*

69.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*

70.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*

71.     Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq.*

72.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*

73.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

74.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*

75.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

76.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. 15 § 751, *et seq.*

77.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*

78.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*

79.     Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*

80.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*

81.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. code Laws § 37-24-1, *et seq.*

82.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*

83.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*

84.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code. § 13-11-1, *et seq.*

85.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq.*

86.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*

87.    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*

88.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.*

89.    The unfair and deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiffs and the members of the Class.

90.    The actions and failures to act of Defendant, and the above described course of

fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale and or/leasing of merchandise of Defendant in violation of the consumer protection statutes listed above

91.     Plaintiffs and class members relied upon Defendants' misrepresentations and omission in applying for and entering into equipment lease contracts and by reason of the unlawful acts engaged in by Defendant, Plaintiffs and the Class have suffered ascertainable loss and damages.

92.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the Class were damaged, and are entitled to compensatory damages, treble damages, attorneys' fees and costs of suit.

**C.     THIRD CLAIM FOR RELIEF:  Common Law Fraud**

93.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

94.     Defendants made misrepresentations and omissions of facts material to Plaintiffs' and Class members' decisions to apply for and lease credit card processing equipment as set forth in detail above by actively concealing, and causing others to conceal, true information about the nature and implications of the application and contracts for the equipment and by not revealing to Plaintiffs and class members the entirety of the contracts.

95.     Defendants knew at the time that it made these misrepresentations and omissions that they were false or that Defendant had failed to disclose facts it was obligated to disclose in order to make its other representations not misleading. Defendants were aware that Plaintiffs and

20

class members would rely on these misrepresentations and omissions, and that such representations were material in the Plaintiffs' and class members' decisions to apply for and enter into equipment lease contracts with Defendants.

96.     Plaintiffs and the Class reasonably relied upon Defendants' misrepresentations and omissions of material fact. Plaintiffs and the Class had no reason to doubt the veracity or validity of the information Defendants promoted through its marketing and sales strategies.

97.     Defendants' misrepresentations and omissions of material fact directly and proximately caused Plaintiffs' and the Class's damages.

98.     By virtue of the fraud they perpetrated on Plaintiffs and the Class, Defendants are liable to Plaintiffs and the Class for all damages Plaintiffs and the Class have sustained, plus punitive damages, plus the cost of this suit, including attorney's fees.

**D.     FOURTH CLAIM FOR RELEIF: Unjust Enrichment**

99.      Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

100.     As an intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the Class made for equipment leases.

101.     In exchange for the payments they made for the leases, and at the time it made these payments, Plaintiffs and the Class expected that the equipment lease contracts were disclosed in full, that they would pay reasonable rates, and that Defendants had provided all of the necessary and accurate information and disclosed all of the lease contract's terms.

102.     Defendants have voluntarily accepted and retained these payments with full knowledge and awareness that, as a result of their wrongdoing, Plaintiffs and the Class paid exorbitant and unconscionable rates and fees for equipment leases when they otherwise would

21

not have done so. The failure of Defendant to provide Plaintiffs and the Class with the remuneration they expected enriched Defendant unjustly.

103.    Plaintiffs and the Class are entitled in equity to seek restitution of Defendants' wrongful profits, revenues and benefits to the extent and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**E.    FIFTH CLAIM FOR RELIEF: Deceit, Fraud and/or Misrepresentation**

104.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

105.    The misrepresentations, nondisclosure and/or concealment of material facts made by Defendants to Plaintiff and the members of the Class, as set forth above, were known by Defendants to be false and material and were intended by the Defendants to mislead Plaintiffs and the members of the Class.

106.    Plaintiffs and the Class were actually misled and deceived and were induced by Defendants to incur charges and fees they otherwise would not have incurred.

107.    As a result of the conduct of Defendants, Plaintiffs and the class members have been damaged by having incurred unwarranted fees and charges taken from their bank accounts.

**F.    SIXTH CLAIM FOR RELIEF: Negligent Misrepresentation**

108.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

109.    Defendants had a duty to provide honest and accurate information to Plaintiffs and class members to prevent them from incurring exorbitant, fraudulent and unconscionable fees and charges associated with equipment leases.

110.    Defendants specifically and expressly indicated to Class members that the

application for a "free trial' for credit card processing equipment and the amount they would be charged for 'terminal fees" was true and reliable, and that the lease contracts that Plaintiffs and class members agreed to were complete and included all terms, when in fact these representations were inaccurate and unreliable.

111.    Such misrepresentations were and are made by Defendants through the use of terms like "free trial" and 'terminal fees", when in fact such representations were not what they purport to be, and the various marketing materials and the contracts foisted on Plaintiffs and class members by Defendants were also misleading and false.

112.    Defendants knew or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand Defendants' representations concerning the term "free trial" as being what it purported it to be -- "free" -- and that the "terminal fees" charged would be precisely what was represented they would be. Defendants also knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand and believe these various representations as accurate and reliable and that any other understanding on the part of consumers would not be reasonable given Defendants' representations.

113.    Plaintiff and the Class members justifiably relied on Defendants' misrepresentations and made applications for and entered into lease contracts for credit card processing equipment, and were subsequently charged exorbitant rates and fees.

114.    As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged by having relied on Defendants' misrepresentations with regard to the equipment lease contracts.

## G.    SEVENTH CLAIM FOR RELIEF: Conversion

115.    Plaintiff incorporates by reference and re-alleges all paragraphs previously

alleged herein.

116.    Plaintiff and the Class members own and have the right to possess the money that is in their bank accounts.

117.    Defendants interfered with Plaintiffs' and the Class members' possession of this money by wrongfully taking directly from their bank accounts fees and charges associated with leases of credit card processing equipment from Defendants despite the fact that Plaintiffs and class members had never authorized such deductions at the rates and fees charged. Plaintiff and the Class members never consented to Defendants taking such fees and charges from their bank accounts.

118.    Plaintiff and the Class members have been damaged by Defendants' wrongful taking of such fees and charges from their bank accounts in an amount that is capable of identification through Defendants' records.

## H.    EIGHTH CLAIM FOR RELIEF: Breach of Contract

119.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

120.    Defendants engaged in a pattern and practice of charging and collecting sums in excess of those specified in the equipment lease and applications provided to Plaintiffs and class members and by imposing different terms on the lease and contract than those promised and revealed to Plaintiffs and class members.

121.    In so doing, Defendants breached its contracts with Plaintiffs and the class. Defendants willfully and systematically concealed the terms of the contracts from Plaintiffs, the Class, and the general public, in a practice that is ongoing.

122.    As a direct and proximate result of Defendants' breach and concealment of facts, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

24

## VII.    PRAYER FOR RELIEF

123.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, prays for relief as follows:

a.    For an order certifying the Class and appointing Plaintiffs and his counsel to represent the Class;

b.    For an order awarding Plaintiffs and the Class compensatory damages and restitution and/or disgorgement and other equitable relief as the Court deems proper;

c.    For an order enjoining Defendants from engaging in the wrongful practices described herein;

d.    For an order awarding Plaintiffs and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be deemed applicable; and

e.    For an order awarding such other and further relief as this Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

124.    Plaintiffs, and all others similarly situated, hereby demand a trial by jury of all claims so triable herein.

DATED:    August 11, 2010

Respectfully submitted,

HANLY CONROY BIERSTEIN SHERIDAN
FISHER & HAYES LLP

By: _____
Mitchell M. Breit
mbreit@hanlyconroy.com

25

112 Madison Avenue
New York, NY 10016-7416
Telephone:  (212) 784.6400
Facsimile:  (212) 213-5949

Hunter J. Shkolnik
hshkolnik@rheingoldlaw.com
Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP
113 East 37th Street
New York, New York 10016
Telephone: (212) 684-2880
Facsimile: (212) 689-8156


*Attorneys for Plaintiff and the Proposed Class*

*Of Counsel*

Richard J. Arsenault
rarsenault@nbalawfirm.com
Neblett Beard & Arsenault
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (800) 256-1050
Facsimile: