**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GUS GAGASOULES, JAN NIBLETT,
LUSTER COTE, INC., RHONDA GARNER,
AND DÉCOR SPECIALTIES, INC., ON
BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED,

                    Plaintiffs,

        -against-

MBF LEASING LLC,

                    Defendant.
-------------------------------------------------------------X

**MEMORANDUM OF DECISION AND
ORDER**
08-CV-2409 (ADS)(ARL)

## APPEARANCES:

**Chittur & Associates, P.C.**
*Attorney for the plaintiffs*
286 Madison Avenue, Suite 1100
New York, NY 10017
      By: Krishnan Shanker Chittur, Esq., Of Counsel

**Klafter Olsen & Lesser LLP**
*Attorneys for the plaintiffs*
Two International Drive, Suite 350
Rye Brook, NY 10573
      By: Seth R. Lesser, Esq., Of Counsel

**The Law Office of Keith Altman**
*Attorneys for the plaintiffs*
32250 Calle Avella
Temecula, CA 92592
      By: Keith Altman, Esq., Of Counsel

**Hanley Conroy Bierstein Sheridan Fisher & Hayes LLP**
*Attorneys for the plaintiffs*
112 Madison Avenue
New York, NY 10016
      By: Mitchell M. Breit, Esq., Of Counsel

**Moses & Singer LLP**
*Attorneys for the defendant*
405 Lexington Avenue
New York, NY 10174
      By: Jennifer Patricia Nigro, Esq. & Robert D. Lillienstein, Esq., Of Counsel

**SPATT, District Judge.**

More than four years ago, on June 13, 2008, Gus Gagasoules, Jan Niblett and his company Luster Cote, Inc., and Rhonda Garner and her company Decor Specialties, Inc. (collectively "the Plaintiffs") commenced this lawsuit on behalf of themselves and a putative class against MBF Leasing, LLC ("MBF" or "the Defendant"). The complaint set forth sixteen wide-ranging causes of action based on equipment finance leases that they entered into with the Defendant. After the Court dismissed all but one of their claims, the parties spent the next two years engaged in one discovery battle after another, resulting in multiple motions, appeals, and conferences before both this Court and United States Magistrate Judge Arlene R. Lindsay. The Plaintiffs never moved to certify the class. Instead, more than two years into the case, the Plaintiffs moved to file a proposed amended complaint, asserting entirely new causes of action and adding new defendants.

Before the Court could rule on the pending motion to amend, the Plaintiffs withdrew the motion under the auspices of obtaining an expedited resolution of their individual claims. The Court found this curious, insofar as the Plaintiffs had previously represented to the Court that, if the Court denied the motion to amend, the Court would lack subject-matter jurisdiction over the case. On November 23, 2011, the Court held a hearing with respect to whether it retained jurisdiction over the action and directed the parties to submit a letter articulating their respective positions. It was at this juncture that the Plaintiffs, for the first time, argued that the Court retained jurisdiction over their individual claims despite the fact that they had never moved to certify the class. The Court has considered the parties' respective arguments, and, for the reasons set forth below, holds that it lacks subject matter jurisdiction over the Plaintiffs claims.

This holding, however, does not dispose of this case. At numerous points throughout the tortured history of this litigation, the Defendant has attempted to move for sanctions against the Plaintiffs and their counsel. Contrary to any assertion by the Plaintiffs, these motions were denied for procedural reasons—namely because the parties were attempting mediation; a motion was pending before the Court; and the Defendant had failed to comply with the Local Rules prior to filing the motion. Following the Plaintiffs' withdrawal of the motion to amend, the Defendant filed motions for orders: (1) pursuant to 28 U.S.C. § 1927 ("§ 1927") and the Court's inherent power, granting sanctions against Plaintiffs' attorneys of record, Krishnan Chittur of Chittur & Associates, P.C., Seth Lesser of Klafter, Olsen and Lesser LLP, Keith Altman of Finkelstein & Partners, and Mitchell Breit of Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP (collectively referred to as "Counsel"); (2) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(b)(2)(c) and (d)(3), granting sanctions against Counsel and Plaintiffs Niblett and Luster Cote, for engaging in discovery abuses in connection with their refusal to be deposed and their failure to provide court ordered discovery; and (3) pursuant to Fed. R. Civ. P. 11, granting sanctions for the filing of a motion to amend the complaint. Not to be outdone, the Plaintiffs filed a cross-motion for an order pursuant to 28 U.S.C. § 1927 granting sanctions against the Defendant's attorney, Robert Lillientstein, Esq. of Moses & Singer, LLP ("Lillenstein").

For the reasons set forth below, the Defendant's motions for sanctions pursuant to § 1927, the Court's inherent power, Rule 11, and Rule 37(b)(2)(c) are denied and the Defendant's motion for sanctions against Niblett and Luster Cote pursuant to Rule 37(d) is granted. The Plaintiffs' cross-motion for sanctions against Lillienstein pursuant to § 1927 is also denied.

# I. SUBJECT MATTER JURISDICTION

At the time the initial complaint was filed, the Plaintiffs premised this Court's jurisdiction on certain federal causes of action as well as the Class Action Fairness Act of 2005 ("CAFA"). After the Court dismissed all of the Plaintiffs' federal claims, the only basis for this Court's jurisdiction was CAFA. Without CAFA, complete diversity in this case is lacking because Plaintiff Gagasoules is a citizen of New York, as is MBF Leasing, LLC, which is a New York limited liability company whose principal office is located in New York. Moreover, the amount in controversy for all Plaintiffs is far less than $75,000.

The Defendant contends that, because the Plaintiffs never moved for class certification, the Court should dismiss the case because it lacks subject matter jurisdiction under CAFA and is without complete diversity or federal question jurisdiction. The Plaintiffs initially agreed with this position, and expressed as much in letters to the Court and in the proposed pre-trial order. However, the Plaintiffs now take the position that the Court retains jurisdiction because subject matter jurisdiction existed under CAFA at the time the complaint was filed. This issue is not clear, and the Second Circuit has not addressed whether subject matter jurisdiction survives a denial of class certification absent diversity or federal question jurisdiction.

"The circuits that have considered the issue, however, have uniformly concluded that federal jurisdiction under CAFA does not depend on class certification." Weiner v. Snapple Beverage Corp., No. 07-CV-8742, 2011 WL 196930, at * 2 (S.D.N.Y. Jan. 21, 2011) (citing Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010); United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1092 (9th Cir. 2010); Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009)). As the court noted in Weiner, "[t]his conclusion

accords with the general proposition, endorsed by the Second Circuit, that federal jurisdiction is determined at the outset of the litigation."  2011 WL 196930, at * 2 (citing LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001)).

However, the procedural posture of this case warrants a different conclusion.  Despite being given numerous opportunities to do so, the Plaintiffs in this case never moved for class certification based on the surviving allegation in the initial complaint.  Rather, the Plaintiffs represented that the potential for class certification was contingent on whether the Court granted their motion to amend the complaint.  Indeed, the Plaintiffs argued to the Court that the withdrawal of the motion to amend "[did] not compromise the interests of the class" because "[t]here are several parallel class actions pending against the same Defendant and its affiliates" based on the allegations in the *proposed amended complaint*.  (DE # 187.)  Thus, the Plaintiffs not only failed to move for class certification based on the initial complaint, but have essentially conceded that the initial complaint does not state a viable class action claim.

Even those courts that have found that a denial of class certification does not divest a court of CAFA-based subject matter jurisdiction have held that, regardless of any invocation of class action status under CAFA, a federal court lacks jurisdiction if the assertion of CAFA jurisdiction was frivolous or defective from the outset.  Metz v. Unizan Bank, 649 F.3d 492, 501 (6th Cir. 2011) (holding that, even though the "general rule is that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events" there is an exception that "if the jurisdictional allegations are frivolous or defective from the outset, then jurisdiction never existed in the first place, regardless of the plaintiff's invocation of a class action under CAFA."); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010) (holding that, in the context of CAFA jurisdiction, "[f]rivolous attempts to invoke federal

jurisdiction fail, and compel dismissal. If a plaintiff sued in state court a seller of fish tanks on behalf of himself and 1,000 goldfish for $5,000,001 and the defendant removed the case to federal district court, that court would have to dismiss the case, as it would have been certain from the outset of the litigation that no class could be certified"); Thorogood v. Sears, Roebuck and Co., 595 F.3d 750, 752 (7th Cir. 2010) (holding that when "the claim that the suit can be maintained as a class action is frivolous" the district court would lose jurisdiction of the case under CAFA "when [the court] decertified the class.").

The only validly asserted claim in the initial complaint was the breach of contract allegation premised on the Defendant's purported action in filling in price terms in the lease agreements without authorization. The Plaintiffs never moved to certify a class on this cause of action, nor do the Plaintiffs assert that they could have certified a class on this ground. Accordingly, the Court lacks subject-matter jurisdiction over the remaining claims and dismisses them without prejudice.

Finally, although the Court is dismissing the action because it lacks subject matter jurisdiction, it still retains "the power to determine collateral issues, such as the appropriateness of sanctions." Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002).

## II.  THE DEFENDANT'S MOTIONS FOR SANCTIONS

### A.  The Defendant's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11

The Defendant moves for an order pursuant to Fed. R. Civ. P. 11 ("Rule 11") sanctioning the Plaintiffs and/or Counsel for filing a proposed amended complaint, which allegedly falsely asserted that:  (1) the Defendant had charged the Plaintiffs a property tax filing fee and overcharged the Plaintiffs property taxes; (2) the Defendant's leasing agents had filled in blanks in Gagasoules' and Garner's lease agreements outside of their presence; and (3) the Defendant

charged the Plaintiffs an undisclosed insurance premium.  In addition, the Defendant alleges that the proposed amended complaint violated Rule 11(b) because the Plaintiffs did not have a reasonable legal or factual basis for asserting a breach of contract claim against Jay Cohen.

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is:  (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery".  Fed. R. Civ. P. 11(b).  The purpose of Rule 11 "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990).

In general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness."  Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000).  This "standard is appropriate in circumstances where the lawyer whose submission is challenged by motion has the opportunity, afforded by the 'safe harbor' provision, to correct or withdraw the challenged submission."  In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003).  The Second Circuit has cautioned that Rule 11 sanctions should be "made with restraint", Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999), and, even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but

rather is a matter for the court's discretion, <u>Perez v. Posse Comitatus</u>, 373 F.3d 321, 325 (2d Cir. 2004).

### 1.  As to the Allegations Regarding Property Tax Overcharges and Filing Fees

In the proposed amended complaint, the Plaintiffs sought to add additional defendants and two causes of action premised on the allegation that MBF and its associates overcharged putative class members property taxes and charged an undisclosed $25 filing fee towards property tax returns.  In particular, the Plaintiffs asserted that:  (1) MBF, and proposed defendants Jay Cohen and John Does 1-100, constituted an enterprise that unlawfully conspired and engaged in a pattern of racketeering activity involving mail fraud and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), in order "to collect property taxes from class Members at an inflated rate and remit less than the collected amount to the taxing authorities" (PAC ¶ 138); and (2) the proposed defendants were liable for breach of contract for collecting property taxes that were higher than the actual tax liability/payments owed under the leases (PAC ¶ 154).

The Defendants contend that the Plaintiffs and Counsel were in possession of information reflecting that the Plaintiffs had not been charged these fees, and therefore the representation in the proposed amended complaint to the contrary was in violation of Rule 11.  Counsel argues that they never explicitly stated that the named Plaintiffs had been overcharged property taxes, and therefore their claims based on property tax overcharges were not frivolous.  In reply, the Defendant points out that paragraph 17 of the proposed amended complaint, among others, stated that the Plaintiffs' claims are typical of the class.  Thus, the Defendants argue:

> If Plaintiffs' claims are not typical of the class, then paragraph 17
> is false and they had no business filing a class action on behalf of
> all others 'similarly situated.'  If Plaintiffs' claims are typical of

> the class, then the allegations regarding charges of property taxes
> are false. Plaintiffs cannot have it both ways.

(Def.'s Rule 11 Reply Br. at 3.)

The Court agrees, in part. To the extent the RICO and breach of contract claims were premised on property tax overcharges and property tax filing fees, the Plaintiffs' claims were not typical of the class, and any assertion to the contrary was frivolous. Counsel provides the Court with no reasonable basis for their argument that the named Plaintiffs _may_ have been overcharged property taxes. Again, Counsel cannot have it both ways. They cannot strategically avoid alleging that the named Plaintiffs were overcharged property taxes to be in technical compliance with Rule 11(b), but then argue the contrary in memoranda to the Court. Nevertheless, the RICO claims and the other claims in the complaint were not entirely based on property tax overcharges or filing fees, and therefore in that respect the Plaintiffs could validly allege that their claims were "typical" of the class.

Furthermore, the Court notes that the proposed amended complaint has been withdrawn, and the Plaintiffs are no longer attempting to assert claims based on property taxes in this litigation. Although the motion was withdrawn eight months after receiving the safe harbor letter, the parties had already expended funds briefing the motion before the safe harbor letter was received. The only additional expense incurred involved the Court's request for supplemental briefing, which only partially addressed the addition of the property tax claims. Based on the Court's review of the parties' submissions, the Court cannot say that Counsel's conduct in asserting claims premised on property tax overcharges was sanctionable under Rule 11.

## 2. As to the Re-Assertion of Allegations That Blanks Were Filled In After Leaving Plaintiffs' Business Premises

In the initial complaint, the Plaintiffs alleged that MBF breached the lease agreements by: (1) collecting undisclosed taxes and an insurance premium referred to as a "Loss Damage Waiver" or "LDW"; and (2) supplying unbargained for price terms after the Plaintiffs had executed the lease agreements. Following the Court's order on the motion to dismiss, the remaining claim in this case was that the Defendant breached its contracts with the Plaintiffs by "charg[ing] for price terms that were unilaterally supplied by the Defendant[] after the lease agreements were executed by the Plaintiffs." (Memorandum of Decision and Order at 17, DE # 36.) The Defendant argues that the allegations in the proposed amended complaint relating to Gagasoules' and Garner's claims in this respect are contradicted by their deposition testimony. The Court disagrees.

Although the testimony cited by the Defendant from Gagasoules' deposition reflects that the Defendant's leasing agent filled in the name of Gagasoules' bank; the routing number of his account; his home telephone number; and his address in his presence, there is no testimony in the record that contradicts the allegation in the proposed amended complaint that the leasing agent filled in the boxes entitled "Schedule of Payments" and "Equipment Information" outside of his presence. With respect to Garner, the proposed amended complaint alleges that the price terms in her alleged lease were filled in "without her authorization". This allegation does not directly contradict Garner's deposition testimony, and therefore is not a violation of Rule 11.

Thus, because the Defendant has failed to show the existence of evidence directly contradicting the allegations in the complaint regarding Gagasoules' and Garner's breach of contract claims, the Court denies the Defendant's motion for Rule 11 sanctions on this ground.

### 3. As to the Re-Assertion of Claims Based on the Imposition of the LDW Charge

In the proposed amended complaint, the Plaintiffs asserted two theories of liability with respect to the LDW provision. The first was that the Defendant breached the contract by charging an undisclosed insurance premium. As previously stated, the Court dismissed this cause of action in its order on the Defendant's motion to dismiss. Newly asserted in the proposed amended complaint was the allegation that the LDW provision was a "scam", which the Court interpreted as asserting a breach of contract cause of action based on the unconscionability of the LDW provision. (PAC ¶ 66.)

The Defendant contends that the Plaintiffs re-assertion of the previously dismissed LDW overcharge claims violates Rule 11(b)(2). The Plaintiffs do not deny that they included the previously dismissed allegations in the proposed amended complaint, but instead focus on the newly asserted theory of liability that the LDW charge was a "scam".

However, the Plaintiffs' argument that the proposed amended complaint also included a new theory of liability based on the LDW charge does not provide an explanation for why they also asserted a cause of action based on the previously dismissed theory. Although generally this would be a ground for sanctions under Rule 11, the Court notes that, in its order requesting supplemental briefing, the Court explicitly stated that it would reconsider the dismissal of the claim based on the undisclosed insurance premium. Accordingly, any harm caused by the Plaintiffs' failure to withdraw the portion of the proposed amended complaint asserting these claims within the safe harbor period was ameliorated by the Court's reconsideration of the claim. Thus, the Defendant's motion for Rule 11 sanctions on this ground is denied.

**4.  As to the Assertion of a Breach of Contract Claim Against Jay Cohen**

In their motion to amend, the Plaintiffs sought to add Jay Cohen as a defendant.  In the proposed amended complaint, the Plaintiffs alleged that MBF was "part of a group of over 100 entities operating [a] racketeering enterprise" and that "MBF is a shell entity functioning as a 'pass through' for revenues and assets to the racketeering enterprise".  (PAC, ¶ 6.)  According to the Plaintiffs, Jay Cohen "is one of the principals of the racketeering enterprise . . . and one of its masterminds".  (PAC, ¶ 7.)  As a result, the Plaintiffs sought to add Cohen as a defendant and to assert two causes of action against him based on RICO, as well as a cause of action for breach of contract based on the lease agreements between MBF and the Plaintiffs.

The Defendant contends that the addition of Cohen as a defendant on the breach of contract count violated Rule 11(b)(3) because he was not a party to the lease agreements between MBF and the named Plaintiffs.  In opposition, the Plaintiffs argue that the proposed breach of contract claim against Cohen was not sanctionable because they had a factual basis for holding him liable for MBF's actions under the doctrines of alter ego and piercing the corporate veil.

Contrary to the Defendant's contention, the fact that the Plaintiffs did not include allegations in the proposed amended complaint directly asserting that Cohen had the type of control over MBF that would support alter-ego/veil piercing liability, does not mean that such a claim is frivolous.  Even assuming that the Plaintiffs had failed to state a claim, sanctions are only warranted "when it is patently clear that a claim has absolutely no chance of success." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks and citation omitted).  Absent further discovery into the type of control Cohen exhibited over MBF, the Court cannot determine that the Plaintiffs "could not, under any circumstances" plausibly allege a breach of contract claim against Cohen.  See Protter v. Nathan's Famous Sys., Inc., 904 F. Supp.

101, 111 (E.D.N.Y. 1995). Accordingly, the Defendant's motion for Rule 11 sanctions on this ground is denied.

## B. The Defendant's Motion for Sanctions Against Counsel, Niblett and Luster Cote Pursuant to Rule 37

The Defendant's second motion is for sanctions against Counsel, Niblett, and his company, Luster Cote, pursuant to Fed. R. Civ. P. 37(b)(2)(c) and (d)(3) based on their alleged discovery abuses in connection with their refusal to be deposed and their failure to provide court ordered discovery.

As an initial matter, the Court has reviewed the parties' submissions and finds no merit to the Defendant's contention that Counsel, Niblett and Luster Cote failed to provide court ordered discovery. Furthermore, the Court finds that the Defendant has failed to identify a specific order that Counsel, Niblett and Luster Cote violated in order to warrant sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(c). However, as set forth below, the Court finds that Niblett and Luster—but not Counsel—violated Fed. R. Civ. P. 37(d)(3), and therefore are subject to sanctions.

Fed. R. Civ. P. 37(d) ("Rule 37(d)") provides that the Court may order sanctions when a party "fails, after being served with proper notice, to appear for that person's deposition". "Rule 37(d) makes it explicit that a party properly served has an absolute duty to respond, that is, to present himself for the taking of his deposition, . . . and that the court in which the action is pending may enforce this duty by imposing sanctions for its violation." Penthouse Int'l v. Playboy Enters., Inc., 663 F.2d 371, 390 (2d Cir. 1981). There is no question that Niblett and Luster Cote were obligated to appear at their duly noticed depositions. Herbstein v. Dabbah Secs. Corp., 169 F.R.D. 36, 40 (S.D.N.Y. 1996) ("A party who brings an action presumptively obligates herself to sit for a deposition."). Disciplinary sanctions under Rule 37 are intended to serve three purposes: "[f]irst, they ensure that a party will not benefit from its own failure to

comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation. . . ." Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted).

Following almost a year of litigation over the appropriate location for their depositions, on February 1, 2010, Judge Lindsay entered an order requiring Niblett and Luster Cote to appear for depositions the week of March 15, 2010. However, on March 3, 2010, Niblett and Luster Cote filed a motion, seeking a voluntary dismissal without prejudice under Rule 41(a)(2). In an affidavit accompanying that motion, counsel for the Plaintiffs indicated that Niblett and Luster Cote were moving for voluntary dismissal because they no longer wished to serve as representatives of the putative class. On March 6, 2010, three days after the motion was made, the Court signed an order dismissing their claims without prejudice. The Defendant moved for reconsideration, arguing that any dismissal should either be with prejudice, or subject to paying the Defendant's attorney's fees and costs.

In reconsidering its order granting Niblett and Luster Cote's motion to voluntarily dismiss their claims, the Court noted that "the Plaintiffs' failure to explain the basis for their decision does give the Court a degree of skepticism about their motive." (Memorandum of Decision and Order dated July 19, 2010 at 7, DE # 105.) Nevertheless, the Court granted Niblett and Luster Cote a choice between dismissing their claims with prejudice, or remaining as parties and proceeding with the case. Niblett and Luster Cote chose to stay in the case and proceed as class representatives.

Depositions scheduled for Niblett and Luster Cote on August 4, 2010 were cancelled by Counsel. With an approaching discovery deadline, on December 13, 2010, the Defendant

noticed the depositions of Niblett and Luster Cote for December 17, 2010.  Niblett and Luster

Cote did not appear for their duly noticed depositions on December 17, 2010.  Subsequently, the

discovery deadline was extended to March 1, 2011.  On February 17, 2011, the Defendant re-

noticed the depositions of Niblett and Luster Cote for February 28, 2011.  Before this deposition

could take place, on February 23, 2011, Counsel filed a motion to withdraw as the attorneys for

Niblett and Luster Cote "due to a complete break down in communication between counsel and

plaintiff".  (DE # 149.)  On February 28, 2011, neither Niblett, another representative of Luster

Cote, or Counsel appeared at the scheduled deposition.

Counsel's motion to withdraw was vigorously opposed by the Defendant, who asserted

that Counsel was seeking to withdraw in an effort to avoid being sanctioned for Niblett and

Luster Cote's discovery violations.  The Defendant requested that any order permitting Counsel

to withdraw from representing Niblett and Luster Cote be contingent on Counsel paying the

Defendant's attorney's fees and costs associated with attempting to depose Niblett and Luster

Cote.  In opposition, Counsel stated that they had not been in contact with Niblett and Luster

Cote since December 15, 2010.

On April 15, 2011, the Court received a letter from Niblett stating that that the lack of

communication was due to pressing personal issues and apologizing for the lapse on his part.

Niblett stated that he had not been in contact with Counsel for the past three months, which the

Court notes contradicts Counsel's claim that they had not been in communication since

December 15, 2010.  On May 3, 2011, the Court held a telephone conference with counsel for

the parties and Niblett.  Niblett again apologized for losing contact with Counsel, and assured the

Court that he was going to fully cooperate and communicate with his attorneys going forward.

As a result, Counsel withdrew their motion to withdraw as counsel for Niblett and Luster Cote.

In light of Counsel's withdrawal of the motion, the Court denied the Defendant's corresponding request for attorney's fees and costs.

Although it may not rise to the level of bad faith warranting sanctions under this Court's inherent power, the Court has no trouble concluding that sanctions are warranted against Niblett and Luster Cote under Rule 37(d).  See Blauinsel Stiftung v. Sumitomo Corp., No. 99-CV-1108, 2001 WL 1602118, at *7 (S.D.N.Y. Dec. 14, 2001) ("[A] finding of bad faith is not a prerequisite to the imposition of sanctions under Rule 37(d) . . . ."); see also Dragon Yu Bag Mfg. Co. Ltd. v. Brand Science, LLC, 282 F.R.D. 343, 344 (S.D.N.Y. 2012) ("BSL does not dispute that the Chehebars knowingly failed to appear for noticed depositions, and documents submitted by Dragon show that BSL was mostly unresponsive to Dragon's multiple attempts to schedule the depositions.  It is thus clear that sanctions are warranted under Rule 37(d).").  Contrary to Counsel's characterization, the Court's acceptance of Niblett and Luster Cote's apology at the May 3, 2011 conference did not prohibit the Defendant from moving for sanctions.  Although the Court deemed it prudent to elicit a promise of future compliance from Niblett and Luster Cote, this in no way excused the fact that, after representing to the Court that they wished to continue pursuing this action, Niblett and Luster Cote then failed to appear for two scheduled depositions, and stopped communicating with their attorney.

Despite its reservations, the Court gave Niblett and Luster Cote a second chance to continue pursuing their claims.  Their decision to default on their obligations at the considerable expense of the Defendant and to the resources of the Court clearly violated Rule 37(d).

Furthermore, with the Court's decision to dismiss this case for lack of subject matter jurisdiction, Niblett and Luster Cote get the dismissal without prejudice they initially sought *and* successfully avoid having to appear for a deposition.  Thus, absent sanctions, Niblett and Luster

Cote will clearly "benefit from [their] own failure to comply". In addition, because their claims are now being dismissed without prejudice, it is even more important to provide a "general deterrent" for their conduct "[i]n other litigation". Indeed, as the Supreme Court has emphasized, Rule 37 sanctions "must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such deterrent." Roadway Express, Inc. v. Piper, 447 U.S. 752, 763–64, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

As to the appropriate sanction, Rule 37(d) expressly provides that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust". Fed. R. Civ. P. 37(d)(3). Here, the Court finds that Niblett and Luster Cote's failure to appear at their duly noticed depositions was not substantially justified. In addition, the Court is not aware of any other circumstances that would make an award of expenses in this case unjust. The fact that Niblett and Luster Cote were not in contact with Counsel will not serve to avoid the imposition of sanctions under Rule 37(d) insofar as "plaintiffs are responsible for making themselves available to their attorney, whether to respond to obligatory discovery or to take a position on motions made by their adversaries". Dauphin v. Chestnut Ridge Transp. Inc., No. 06-CV-2730, 2009 WL 5103286, at *2 (S.D.N.Y. Dec. 28, 2009).

Therefore, the Court finds that the Defendant is entitled to recover reasonable attorney's fees and costs incurred in connection with time spent scheduling and attending the depositions of Niblett and Luster Cote. In addition, the Defendant is entitled to recover reasonable attorney's

and costs associated with the portion of the motion for sanctions relating to sanctions against

Niblett and Luster Cote for failure to appear at their depositions pursuant to Rule 37(d).

## C. The Defendant's Motion For Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power

The Defendant asserts that Counsel engaged in unreasonable and vexatious conduct that

multiplied the proceedings:  (1) filing the initial complaint; (2) conduct during discovery; (3)

failing to seek class certification; and (4) moving to amend and subsequently withdrawing the

motion to amend.  The Court will address each alleged act of misconduct in turn.

Section 1927 of Title 28 of the United States Code authorizes the courts to sanction an

attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."  28

U.S.C. § 1927.  While the standard for triggering sanctions under Rule 11 is "objective

unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), to impose sanctions under §

1927, the court must make a finding of "conduct constituting or akin to bad faith," In re 60 E.

80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (citation and internal quotation marks

omitted).  See United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991)

("Bad faith is the touchstone of an award under this statute.").  "Unlike Rule 11 sanctions which

focus on particular papers, the inquiry under § 1927 is on a course of conduct."  Bowler v. U.S.

Immigration & Naturalization Serv., 901 F. Supp. 597, 605 (S.D.N.Y. 1995).

Similarly, an award of sanctions under the Court's "inherent power" requires the

defendants to present "clear evidence that the challenged actions are entirely without color, and

[are taken] for reasons of harassment or delay or for other improper purposes."  Oliveri v.

Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks and citation omitted).

"Thus, 'to impose sanctions under either authority, the trial court must find clear evidence that

(1) the offending party's claims were entirely meritless, and (2) the party acted for improper

purposes.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000) (quoting Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997)). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir. 1985).

As set forth below, applying these standards to Counsel's conduct throughout this litigation, the Court declines to impose sanctions on Counsel or the Plaintiffs based on either § 1927 or its inherent power.

### 1. As to the Filing of the Initial Complaint

By way of background, in June of 2008, Plaintiff Rhonda Garner commenced an action against MBF in the Southern District of New York ("the Garner action"). MBF responded to that complaint by filing a motion to dismiss, but before that Court could take up that motion, Garner filed an amended complaint. MBF then moved to dismiss the amended complaint. However, before the Court could address the second motion, Garner sought and was granted a voluntary dismissal under Rule 41. Shortly thereafter, Garner commenced a nearly identical lawsuit in this Court, adding Gagasoules, Niblett and Luster Cote, Inc. as co-Plaintiffs. Following a third round of briefing on a motion to dismiss, this Court dismissed all but one of the Plaintiffs' claims. Based on this procedural history, the Defendant contends that Counsel engaged in unreasonable and vexatious conduct in connection with the initial filing of this action.

The Plaintiffs contend that they withdrew the complaint in the Garner action in the interests of judicial and litigation economy in order to allow the claims of all the named Plaintiffs to be tried in one action. The Court finds this explanation sufficient and declines to infer any bad faith from their actions.

Moreover, the fact that the Court ultimately dismissed the majority of the Plaintiffs' claims does not warrant the imposition of sanctions. First, the Court did not dismiss the complaint in its entirety. Furthermore, as the Plaintiffs note, substantially similar claims to those dismissed by this Court have been upheld by other courts against related entities, based on the same alleged scheme. Although the Court ultimately found that these claims could not be maintained as plead in this case, against this particular Defendant, the Plaintiffs have shown a "subjective good faith" belief in the merits of the initial complaint, and "in the absence of any other evidence indicating an absence of a genuine belief in the validity of the action, [the Court] conclude[s] that the record cannot support an inference of bad faith on the part of the [Plaintiffs]." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999).

**2. As to Counsel's Conduct During Discovery**

Between July of 2009 and February of 2010, the parties engaged in a contentious and protracted discovery dispute over the appropriate location for the Plaintiffs' depositions. Niblett and Garner, both California residents, maintained that they should not be required to travel to New York to be deposed. MBF took the position that since the Plaintiffs chose to litigate in this forum, they should be expected to travel to New York for depositions. After various discussions by counsel, letter motions, court appearances and an appeal to this Court, as well as extension negotiations regarding appropriate video-conferencing platforms, Garner agreed to travel to New York for her deposition. Based on this reversal of position, the Defendant argues that the Court can infer that "Counsel's intent in raising the issue of video-conference depositions was not to make the deposition process cheaper or easier, but instead to unreasonably multiply proceedings." (Def.'s § 1927 Br. at 8.) The Court finds that such an inference is not warranted.

In opposition to this motion, Counsel persuasively cites to caselaw that provided their reasonable, although ultimately incorrect, belief that they were not required to produce the Plaintiffs for depositions in New York. Furthermore, the fact that the Plaintiffs ultimately determined that it would be more cost-effective to fly the named Plaintiffs to New York for their depositions does not support an inference that their attempt to avoid that cost by finding a less expensive video-conferencing alternative was a bad faith attempt to delay the litigation.

In hindsight, it would have been more cost-effective for both parties had the Plaintiffs simply flown Garner and Niblett to New York rather than engaging in a year of motion practice and fruitless negotiations over video-conferencing platforms. However, the Court cannot say that Counsel's attempt to lower the cost of discovery was "entirely without color and . . . taken for reasons of harassment or delay or for other improper purposes." Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986) (internal quotation marks and citation omitted).

The Defendant also seeks sanctions against Counsel for Niblett and Luster Cote's failure to submit to a deposition. In this regard, the Defendant moves for sanctions against Counsel pursuant to § 1927, and against Niblett and Luster Cote pursuant to the Court's inherent power. With respect to the motion for sanctions as against Counsel, based on the Court's review of the submissions, there is insufficient evidence to warrant a finding that Counsel was responsible for Niblett and Luster Cote's failure to appear at their duly noticed depositions. Therefore the Court declines to award sanctions against Counsel on this ground.

Similarly, there is no basis for finding bad faith on the part of Niblett and Luster Cote. With respect to their initial withdrawal from the case before their first scheduled deposition, Niblett and Luster Cote explained that they no longer wished to serve as class representatives,

which is a valid reason for withdrawal. Although the Court questioned their motives in its order denying Niblett and Luster Cote the opportunity to withdraw without prejudice, the Court declined to find bad faith. As to their failure to appear for their depositions on December 17, 2010 and February 23, 2011, Niblett explained to the Court that "pressing personal issues" prevented him from actively pursuing this litigation. The Court accepted this explanation at the May 3, 2011 conference, at which time Niblett and Luster Cote affirmed they would continue to participate in the litigation. Thus, even if Niblett and Luster Cote's behavior can in part be viewed as an attempt to avoid being deposed in this matter—which, as the Court previously held, is sanctionable under Rule 37(d)—there was at least some colorable basis for their actions. Accordingly, sanctions against Niblett and Luster Cote pursuant to the Court's inherent power for their conduct during discovery are not warranted.

### 3. As to the Failure to Move to Certify the Class

The Defendant contends that Counsel "vexatiously multiplied proceedings by insisting on prosecuting this putative class action, forcing Defendant to spend many tens of thousands of dollars in connection with 'class' discovery and related motion practice, despite their knowledge that there is no merit to the only remaining claim in this case, and without ever moving to certify a class." Although the Court ultimately agrees that the Plaintiffs' complaint did not state a valid class action claim, the Court cannot say that Counsel pursued this claim in bad faith. In order to justify the imposition of sanctions pursuant to § 1927, there must be no colorable basis for an action.

Upon review of the parties' submissions, the Court cannot conclude that Plaintiff's pursuit of this case as a class action was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay."

<u>Oliveri</u>, 803 F.2d at 1273; <u>see</u> <u>also</u> <u>Revson</u>, 221 F.3d at 78–79 (claim is deemed "colorable" when, viewed in light of the reasonable beliefs of the party making the claim, it has some amount of factual and legal support); <u>Sierra Club</u>, 776 F.2d at 390 ("meritlessness alone" is an insufficient basis to impose sanctions under 28 U.S.C. § 1927).

### 4. As to the Filing and Withdrawal of the Proposed Amended Complaint

The filing and ultimately the withdrawal of the motion to amend presents a closer question. Counsel claims that they withdrew the motion to amend in order to expedite the resolution of the named Plaintiffs' individual claims. According to Counsel, since the class claims are being adjudicated in the context of other cases, withdrawing the motion to amend was in the best interest of the named Plaintiffs, "since they will not further prejudiced by any delays that would arise out of class discovery, class briefing, and class decision". (Chittur Decl. ¶ 22.) The Plaintiffs had a right to withdraw the motion to amend, and their reasons for doing so are not for this Court to question. <u>Wolters Kluwer Fin. Servs., Inc. v. Scivantage</u>, 564 F.3d 110, 114 (2d Cir. 2009) ("It follows that Dorsey was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable."). However, the Plaintiffs' reasons for filing the motion to amend is within the realm of conduct this Court can consider in determining whether sanctions are appropriate.

There is no doubt that Counsel knew at the time they filed the motion to amend that the motion itself would delay the resolution of the named Plaintiffs' claims and that a decision in their favor would cause an even further delay. As indicated by the Court's request for supplemental briefing, the Plaintiffs' motion was under review. In fact, the Court even offered the Plaintiffs an opportunity to seek reconsideration of one of their previously dismissed causes

of action, long after the time for seeking reconsideration had passed. The Plaintiffs' actions resulted in the Defendant, as well as the Court, expending substantial resources to address the newly asserted claims.

Nevertheless, the bar for awarding sanctions pursuant to § 1927 and the Court's inherent power is an exacting one. The Court can view Counsel's changes in litigation strategy one of two ways. On the one hand, as the Defendant urges, the Court can view the subsequent change in priorities to mean that Counsel's only purpose in moving to amend the complaint was to unreasonably multiply the proceedings, delay the dismissal of the named Plaintiffs' claims, and harass the Defendant. On the other hand, the Court can interpret Counsel's actions as simply a change in preferences in light of the multitude of other cases where the newly asserted claims were being litigated. With much hesitation, the Court chooses to adopt the latter view. While Counsel may have engaged in a misguided use of the legal process, the Court cannot say that they abused the legal process. See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170 (2d Cir. 2012) ("Of course, even if Li acted foolishly in commencing the second action, we cannot say that the district court abused its discretion in finding insufficient evidence that Li's actions were "entirely without color and [were taken] for reasons of harassment or delay or for other improper purposes.").

### III. THE PLAINTIFFS' MOTION FOR SANCTIONS

The Plaintiffs cross-move for sanctions against Lillienstein on the ground that the Defendant's motion for sanctions is meritless and was filed for the purpose of harassing the Plaintiffs and forcing them to incur unnecessary litigation expenses. This cross-motion borders on frivolous and is denied.

Whether to impose sanctions is within the Court's discretion. Thus, the fact that the Court denied the majority of the Defendant's motions for sanctions is not equivalent to the motions themselves being "frivolous" or "meritless". To the contrary, the Defendant's motions raised some serious issues, and the Court's decision not to impose sanctions on Counsel was not reached lightly. However, the standard for imposing sanctions is high, and something which this Court is loathe to do absent clear evidence of bad faith.

In the Court's view, Counsel's conduct throughout this litigation was highly disorganized and counterproductive, particularly with respect to scheduling the depositions of Garner and Niblett and filing and withdrawing the motion to amend. In both cases, Counsel ultimately decided on the course of action that, if taken at the outset, would have avoided years of litigation that unnecessarily consumed judicial resources, not to mention the resulting excessive attorney's fees on both sides. In addition, the Defendant has spent four years litigating a case where the Court ultimately lacked subject matter jurisdiction and will now potentially be forced to continue litigating the case in another forum. Under these circumstances, the Court certainly cannot say that Lillienstein did not have a "colorable" basis for seeking sanctions against the Plaintiffs and Counsel.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that this case is dismissed without prejudice for lack of subject matter jurisdiction, and it is further

**ORDERED**, that the Defendant's motion for sanctions against the Plaintiffs and Counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent power is DENIED, and it is further

**ORDERED**, that the Defendant's motion for sanctions against the Plaintiffs and Counsel pursuant to Fed. R. Civ. P. 11 is DENIED, and it is further

**ORDERED**, that the Defendant's motion for sanction against Counsel and Niblett and Luster Cote pursuant to Fed. R. Civ. P. 37(b)(2)(c) is DENIED, and it is further

**ORDERED**, that the Defendant's motion for sanctions against Counsel pursuant to Fed. R. Civ. P. 37(d) is DENIED, and it is further

**ORDERED**, that the Defendant's motion for sanctions against Niblett and Luster Cote pursuant to Fed. R. Civ. P. 37(d) is GRANTED. The Defendant is directed to submit an application for attorney's fees and costs consistent with this Court's decision within ten days of the date of this order, and it is further

**ORDERED**, that the Plaintiffs' motion for sanctions against Lillienstein pursuant to 28 U.S.C. § 1927 is DENIED.

**SO ORDERED**.
Dated: Central Islip, New York
September 29, 2012

＿＿*/s/ Arthur D. Spatt*＿＿＿＿
ARTHUR D. SPATT
United States District Judge