FILED
CLERK

4/24/2013 11:37 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GUS GAGASOULES, JAN NIBLETT,
LUSTER COTE, INC., RHONDA GARNER,
AND DÉCOR SPECIALTIES, INC., ON            MEMORANDUM OF DECISION AND
BEHALF OF THEMSELVES AND ALL               ORDER
OTHERS SIMILARLY SITUATED,                 08-CV-2409 (ADS)(ARL)

                Plaintiffs,

        -against-

MBF LEASING LLC,

                Defendant.
----------------------------------------------------------X
**APPEARANCES:**

**Chittur & Associates, P.C.**
*Attorney for the Plaintiffs*
286 Madison Avenue
Suite 1100
New York, NY 10017
       By:  Krishnan Shanker Chittur, Esq., Of Counsel

**Klafter Olsen & Lesser LLP**
*Attorneys for the Plaintiffs*
Two International Drive
Suite 350
Rye Brook, NY 10573
       By:  Seth R. Lesser, Esq., Of Counsel

**The Law Office of Keith Altman**
*Attorneys for the Plaintiffs*
32250 Calle Avella
Temecula, CA 92592
       By:  Keith Altman, Esq., Of Counsel

**Hanley Conroy Bierstein Sheridan Fisher & Hayes LLP**
*Attorneys for the Plaintiffs*
112 Madison Avenue
New York, NY 10016
       By:  Mitchell M. Breit, Esq., Of Counsel

**Moses & Singer LLP**
*Attorneys for the Defendant*
405 Lexington Avenue
New York, NY 10174
  By: Jennifer Patricia Nigro, Esq.
     John Vincent Baranello, Esq.
     Robert D. Lillienstein, Esq., Of Counsel

**SPATT, District Judge.**

  On June 13, 2008, Gus Gagasoules ("Gagasoules"), Jan Niblett ("Niblett"), Niblett's company Luster Cote, Inc. ("Luster Cote"), Rhonda Garner ("Garner") and Garner's company, Decor Specialties, Inc. ("Décor Specialties," and, collectively, "the Plaintiffs"), commenced this action on behalf of themselves and a putative class against MBF Leasing, LLC ("the Defendant").  The Complaint set forth 16 wide-ranging causes of action based on equipment finance leases that the Plaintiffs entered into with the Defendant.  On February 2, 2009, the Court dismissed all but one of the Plaintiffs' claims.  The remaining claim alleged that the Defendant breached the contracts at issue "[b]y charging and collecting sums in excess of those specified in the first page of the Form Lease, and by imposing undisclosed amounts towards alleged taxes and insurance coverage[.]"  (Original Compl., ¶ 166.)

  Thereafter, on September 29, 2012, the Court dismissed the Plaintiffs' case without prejudice for lack of subject matter jurisdiction. Also on September 29, 2012, the Court granted the Defendant's motion for sanctions against Niblett and Luster Cote pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(d).  In this regard, the Court held:

> [T]he Defendant is entitled to recover reasonable attorney's fees and costs incurred in connection with time spent scheduling and attending the [December 17, 2010 and February 23, 2011] depositions of Niblett and Luster Cote [as they had failed to attend].  In addition, the Defendant is entitled to recover reasonable attorney's and costs associated with the portion of the motion for sanctions relating to sanctions against Niblett and Luster Cote for failure to appear at their depositions pursuant to Rule 37(d).

2

Gagasoules v. MBF Leasing LLC, 286 F.R.D. 205, 216 (E.D.N.Y. 2012). The Court directed the Defendant to submit an application for attorneys' fees and costs consistent with the Court's decision. Id. at 220.

Presently before the Court is the Defendant's application for attorneys' fees and costs in accordance to the Court's September 29, 2012 Order. The Defendant requests Niblett and Luster Cote, jointly and severally, pay the Defendant the sum of $23,370.07 as a sanction pursuant to Fed. R. Civ. P. 37(d). (Lilliensen Decl., ¶ 9.) In support of its application, the Defendant has submitted a generated spreadsheet listing all of the time entries it believes to be related, either in whole or in part, to time spent by attorneys at the Defendant's firm, Moses & Singer LLP ("Moses & Singer"), on issues that the Court found to be sanctionable. (Lilliensen Decl., ¶ 4.) The Defendants also included the biographies of each of the attorneys who performed services for the Defendant in this action. (Lilliensen Decl., ¶ 7.)

Niblett and Luster Cote oppose the Defendant's application. According to Niblett and Luster Cote, the "Defendant's request is wildly exaggerated, way beyond what this Court permitted, and unsupported by reliable documentation mandated by Second Circuit Law." (Pl Opp., pg. 1.) The Defendant did not reply to Niblett and Luster Cote's Opposition. For the reasons that follow, the Court denies the Defendant's application without prejudice with leave to file a revised application consistent with this decision.

## I. DISCUSSION

### A. Legal Standard

When, as here, a party has been sanctioned pursuant to Fed. R. Civ. P. 37(d) for failure to attend its own deposition, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the

failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).  In this case, the Court sanctioned Niblett and Luster Cote, but not their counsel, for their failure to attend the December 17, 2010 and February 23, 2011 depositions.

"Attorneys' fees are determined in th[e] [Second Circuit] by reference to the 'presumptively reasonable fee,' Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008) [(hereinafter "Arbor Hill"), which 'boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively,' Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)[.]" Konits v. Karahalis, 409 F. App'x 418, 422 (2d Cir. 2011).  In determining a "presumptively reasonable fee," district courts should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill, 522 F.3d at 190.  Thus, in order to reach the presumptively reasonable fee, the court must assess "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a reasonable number of hours expended by counsel. McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010).

Case-specific considerations include, among others, the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). See Konits, 409 F. App'x at 422 (citing Arbor Hill, 522 F.3d at 190).  Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's

4

customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717–19. However, "[t]he most critical factor in the district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (internal quotation marks and citation omitted).

In addition, according to the Second Circuit, the "reasonable hourly rate is the rate a paying client would be willing to pay." Id.; see McDaniel, 595 F.3d at 420 (noting that a presumptively reasonable fee represents an approximation of "what a competitive market would bear"). Thus, "the presumptively reasonable fee is calculated by setting a reasonable hourly rate that reflects what rate a paying client would be willing to pay, and multiplying that rate by the number of hours reasonably expended litigating the case." Joe Hand Promotions, Inc. v. Martinez, No. 07 Civ. 6907, 2008 WL 4619855, at *7 (S.D.N.Y. Oct. 17, 2008); see Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing Arbor Hill, 522 F.3d at 189) (noting that the "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours.").

**B.  The Defendant's Application for Attorneys' Fees**

    **1.  As to the Reasonable Hourly Rate**

The United States Supreme Court has directed that district courts should use the "prevailing [hourly rate] in the community" in calculating what the Second Circuit now refers to as the presumptively reasonable fee. Arbor Hill, 522 F.3d at 190 (citing Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). The Second Circuit has explained that the

5

"community" to which the district courts should look is the community in which the district court sits. Arbor Hill, 522 F.3d at 190 (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)); Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174–75 (2d Cir. 2009) (noting that the "presumptively reasonable fee" standard uses the hourly rates employed in the district in which the reviewing court sits, unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.") (internal quotation omitted); see also Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (finding that district court did not abuse its discretion by reducing fees so that they were line with other fees awarded in the Eastern District of New York); Luciano v. Olsten Corp., 109 F.3d 111, 115–16 (2d Cir. 1997) (holding that the district court, in setting fees, appropriately relied upon prevailing market rates in the Eastern District of New York where the case was commenced and litigated); Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (observing that the "prevailing community" the district court should consider is "the district in which the court sits").

"In the Eastern District of New York, depending on the nature of the action, extent of legal services provided, and experience of the attorney, hourly rates range from approximately $300 to 400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates." Firststorm Partners 2, LLC v. Vassel, 10-CV-2356(KAM)(RER), 2012 U.S. Dist. LEXIS 115204, at *9 (E.D.N.Y. Aug. 15, 2012) (collecting cases); see Ferrara v. Prof'l Pavers Corp., 11-CV-1433 (KAM)(RER), 2013 U.S. Dist. LEXIS 40907, at *17 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from approximately $200–300 for senior associates, $100–$200 for junior associates, and $70–$100

6

for paralegals."); Gesualdi v. Tapia Trucking LLC, 11-CV-4174 (DLI) (JMA), 2013 U.S. Dist. LEXIS 31739 (E.D.N.Y. Mar. 6, 2013) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants.") (citing Ferrara v. CMR Contracting LLC, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (in turn, citing Carco Group, Inc. v. Maconachy, CV 05-6038 (ARL), 2011 U.S. Dist. LEXIS 138213, at *11 (E.D.N.Y. Dec. 1, 2011))); Cadles of Grassy Meadows II, L.L.C. v. St. Clair, 10-CV-1673(JS)(ETB), 2012 U.S. Dist. LEXIS 179622, at *5 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern District of New York, courts have determined reasonable hourly rates to be 'approximately $300–450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'") (quoting Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298–99 (E.D.N.Y. 2012) (in turn, quoting Pilitz v. Inc. Village of Freeport, CV 07-4078 (ETB), 2011 U.S. Dist. LEXIS 132666, at *14 (E.D.N.Y. Nov. 17 2011))); Szczepanek v. Dabek, 10-cv-2459(SJF)(ARL), 2011 U.S. Dist. LEXIS 23458, at *22 (E.D.N.Y. Mar. 7, 2011) (surveying cases and stating that recent prevailing hourly rates in the Eastern District are between $200 and $400 for partners, $100 and $295 for associates, and $70 and $80 for legal assistants).

Here, the Defendant's calculation of attorneys' fees is based on billable hourly rates ranging from $215 to $735 an hour. (Lillienstein Decl., Exh. A.) In this regard, (1) attorney Arnold N. Bressler, Esq. ("Bressler"), a partner at Moses & Singer with approximately 35 years of experience, billed at a rate of $675 to $735 an hour; (2) attorney Abraham Y. Skoff, Esq. ("Skoff"), a partner at Moses & Singer with approximately 25 years of experience, billed at a rate of $635 an hour; (3) attorney Robert D. Lillienstein, Esq. ("Lillienstein"), counsel to Moses & Singer with approximately 20 years of experience, billed at a rate of $480 to $545 an hour; (4)

attorney Osato F. Chitou, Esq. ("Chitou"), a summer associate at Moses & Singer, billed at a rate of $215 an hour; and (5) attorney Jennifer Nigro, Esq. ("Nigro"), an associate at Moses & Singer whose years of experience was not provided, billed at a rate of $405 to $420 an hour. (Lillienstein Decl., Exhs. A and B.) These hourly rates are clearly above the hourly rates typically approved by courts in this district.

In assessing the reasonableness of the Defendant's proposed hourly rates, the Court is cognizant of the Johnson factors. In this case, the Court does not find that the legal work at issue—that is, the time spent scheduling and attending Niblett and Luster Cote's December 17, 2010 and February 23, 2011 depositions, as well as the time spent drafting the relevant portions of the motion for sanctions—was of such complexity or required particular skills of expertise so as to justify the Court stepping outside the generally acceptable range for hourly rates. Accordingly, the Court rejects the hourly rates provided by the Defendant and, in light of the Johnson factors outlined above, determines that the following hourly rates are reasonable in this case: (1) for Bressler and Skoff, as partners with 25 to 35 years of experience, $350 an hour; (2) for Lillienstein, as counsel with 20 years of experience, $300 an hour; and (3) for Chitou, as a summer associate, $100 an hour. With respect to Nigro, the Defendant failed to provide specific biographical information concerning her years of experience or even whether she was a senior or junior associate, so as to justify the rates it seeks; therefore, the Court reduces her billable rate to $150 an hour. See, e.g., Pilitz, 2011 U.S. Dist. LEXIS at *15 ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested.") (citations omitted); Protection One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys'

and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested").

### 2. As to the Hours Expended

"In calculating the number of reasonable hours, the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and citation omitted). A plaintiff must show contemporaneous time records, detailing, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998).

> There are two elements to this mandated record keeping: time and content. As to time: The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do. As to content: The records must be specific and detailed.

Handschu v. Special Servs. Div., 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

Further, the Court must assess the reasonableness of the time expended and adjust those portions of an invoice that reflect "excessive, redundant or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction." Manzo v. Sovereign Motors Cars., Ltd., No. 08 Civ. 1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). "The Court is not, however, required to set forth item-by-item

9

findings concerning what may be countless objections to individual billing items." Regan, 768 F. Supp. 2d at 418.

According to Niblett and Luster Cote, the Defendant has not presented contemporaneous and detailed time-sheets to support the number of hours for which it seeks to be compensated. Niblett and Luster Cote further argue that the spreadsheet that the Defendant has submitted contains "block-billing," or the practice of grouping together different tasks, as well as lists hours for tasks unrelated to the Court's September 29, 2012 Order.

As an initial matter, the Court finds that Niblett and Luster Cote have mischaracterized the documentation that is presently before the Court. In this regard, the Defendant has submitted

> a spreadsheet listing all of the time entries . . . [allegedly] related, either in whole or in part, to the time spent by attorneys [at Moses & Singer] on issues that the Court found to be sanctionable. The spreadsheet is drawn from the computerized business records of Moses & Singer that are maintained in the ordinary course of its business. Each time entry shown on the spreadsheet was recorded by a Moses & Singer attorney, at or about the time of each service provided, by persons whose jobs it was to make such entries.

(Lillienstein Decl., ¶ 4.) A computerized listing such as this is sufficient, even if it is a reconstruction of contemporaneous records. Cruz v. Local Union No. 3 of Intern. Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) ("A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records. We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of Carey."); see David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying Carey . . . ."). Therefore, the Court

finds the submission made by the Defendant to be a proper computerized listing of contemporaneous time records.

With respect to Niblett and Luster Cote's complaint that the Defendant's spreadsheet contained "block-billing," thus requiring the Defendant to provide non-contemporaneous estimates of the percentage of time applicable to sanctionable issues, the Court finds their argument unavailing. "Generally, when billing records reveal repeated use of block billing, 'courts have used percentage reductions "as a practical means of trimming fat from a fee application."'" Leser v. U.S. Bank N.A., 09-CV-2362 (KAM)(MDG), 2012 U.S. Dist. LEXIS 21626, at *16 (E.D.N.Y. Feb. 21, 2012) (quoting Penberg v. Healthbridge Mgmt 08 CV 1534 (CLP), 2011 U.S. Dist. LEXIS 31022, at *29 (E.D.N.Y. Mar. 22, 2011) (in turn, quoting Carey, 711 F.2d at 1146)). Therefore, the Court finds the Defendant's method of recommending percentage reductions to be appropriate here.

The final issue that remains is whether the Defendant includes hours in the spreadsheet for tasks falling outside the scope of the Court's September 29, 2012 Order. At the outset, the Court reiterates that it "is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items.'" Siracuse v. Program for the Dev. of Human Potential, 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456, at *105 (E.D.N.Y. Apr. 30, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)). Nevertheless, a review of the spreadsheet reveals that the Defendant has included hours for tasks relating to issues that are beyond those which the Court found to be sanctionable. In this regard, as discussed above, the Court's September 29, 2012 Order awarded the Defendant attorneys' fees and costs only associated with (1) time spent scheduling and attending the depositions of Niblett and Luster Cote scheduled for December 17, 2010 and February 23, 2011 and (2) the portion of the

Defendant's motion for sanction relating to sanctions against Niblett and Luster Cote for their failure to appear at the abovementioned depositions pursuant to Fed. R. Civ. P. 37(d). Indeed, the Court specifically declined to sanction Niblett or Luster Cote for any other conduct related to alleged discovery abuses, including beside the two depositions they failed to attend.

However, here, it appears that the Defendant does not limit its application for attorneys' fees to the confines of the narrow scope of the Court's September 29, 2012 Order. For example, the Defendant seeks fees for hours drafting other letter motions for sanctions made prior to the dates of the two depositions that are at issue. (Lillienstein Decl., Exh. A.) In addition, the Defendant requests fees in connection with tasks related to the canceled August 4, 2010 deposition, even though the Court declined to award the Defendant any attorneys' fees or costs associated with this deposition. (Lillienstein Decl., Exh. A.) The Defendant's application also includes hours for tasks involving the parties' disagreement over video-conferencing and the location of the depositions, which is again unrelated to the Court's September 29, 2012 Order. (Lillienstein Decl., Exh. A.)

In addition, the Defendant's spreadsheet includes entries for preparing for depositions dating as far back as September 2009, which seem unlikely to be related to either the December 17, 2010 deposition or the February 23, 2011 deposition. (Lillienstein Decl., Exh. A.) More importantly, the Court's September 29, 2012 Order did not award the Defendant any attorneys' fees and costs for the time spent preparing for the December 17, 2010 or February 23, 2011 depositions. Rather, the Court's September 29, 2012 Order specifically limited the Defendant's recovery only to only those attorneys' fees and costs associated with the time spent either scheduling or attending the two depositions at issue.

12

In light of these serious errors in the spreadsheet, as well as potential others, the Court rejects the Defendant's application for attorneys' fees and costs, with leave to file a revised application consistent with this decision.

## II. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant's application for attorneys' fees and costs is denied without prejudice with leave to file a revised application for attorneys' fees and costs consistent with the Court's decision, particularly with respect to (1) the reasonable hourly rate and (2) the reasonable number of hours expended. The Court directs that there will be no payment for the legal work done with regard to the revised application. The Defendant is directed to submit its revised application within ten days of the date of this order.

**SO ORDERED**.
Dated: Central Islip, New York
April 24, 2013

              ___/s/ Arthur D. Spatt_____
                ARTHUR D. SPATT
               United States District Judge